**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
NU-PHARM INC.                                       )
50 Mural Street, Units 1 and 2                      )
Richmond Hill, Ontario L4B I E4,                    )
                                                    )
                    Plaintiff,                      )     Case No. 08-cv-00070 (RWR)
          v.                                        )
                                                    )
FOOD AND DRUG ADMINISTRATION                        )
5600 Fishers Lane                                   )
Rockville, Maryland 20857,                          )
                                                    )
MICHAEL O. LEAVITT                                  )
Secretary of Health and Human Services              )
200 Independence Avenue, S.W.                       )
Washington, D.C. 20201, and                         )
                                                    )
ANDREW C. VON ESCHENBACH, M.D.                      )
Commissioner of Food and Drugs                      )
5600 Fishers Lane                                   )
Rockville, Maryland 20857,                          )
                                                    )
                    Defendants.                     )
_____)

**NU-PHARM INC.'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

           Pursuant to Rule 65(a) and (b) of the Federal Rules of Civil Procedure and LCvR

65.1, Nu-Pharm Inc. ("Nu-Pharm") hereby respectfully moves for a temporary restraining order

and/or preliminary injunction against the Food and Drug Administration ("FDA"); Michael O.

Leavitt, in his official capacity as Secretary of Health and Human Services; and Andrew von

Eschenbach, in his official capacity as Commissioner of Food and Drugs (collectively, the

"Federal Defendants"), requiring FDA to award immediate final approval for Nu-Pharm's

divalproex sodium delayed-release 500 mg tablets under Nu-Pharm's ANDA No. 77-615.

In the event the Court denies such relief, Nu-Pharm respectfully moves for emergency relief pending appellate review. Specifically, in the event the Court denies Nu-Pharm's request for emergency injunctive relief, Nu-Pharm respectfully requests that any adverse FDA decision be stayed and that Nu-Pharm's 500 mg product be finally approved pending review by, and appeal of this matter to, the United States Court of Appeals for the D.C. Circuit, in order to prevent devastating and irreparable harm to Nu-Pharm.

The grounds for this motion are fully set forth in the accompanying brief in support of Nu-Pharm's motion and the Declaration of William A. Rakoczy (and attached exhibits), filed contemporaneously herewith.

Pursuant to LCvR 65.1(a), Nu-Pharm certifies that in advance of this filing, Nu-Pharm informed the Federal Defendants of its intent to seek a temporary restraining order and/or preliminary injunction in this matter, as well as the time of the making of the application, and has provided the Federal Defendants with copies of this motion and all supporting papers, including the proposed order. The Federal Defendants have declined to consent to entry of the requested temporary restraining order and/or preliminary injunction, and consultation pursuant to LCvR 7(m) has failed to narrow the areas of disagreement.

Dated: January 15, 2008.                Respectfully submitted,

                                        NU-PHARM INC.

                                By:     ___/s/ William A. Rakoczy_____
                                            One of its attorneys


William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500

Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Nu-Pharm Inc.*

**CERTIFICATE OF SERVICE**

I, William A. Rakoczy, HEREBY CERTIFY that on this 15th day of January 2008, a true and correct copy of: (a) Nu-Pharm Inc.'s Motion for Temporary Restraining Order and/or Preliminary Injunction; (b) Memorandum in Support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction; (c) Proposed Order; (d) Certificate of Counsel Pursuant to Local Rule 65.1(a); (e) Declaration of William A. Rakoczy and all exhibits thereto; and all other papers filed in this matter were served via overnight and electronic mail upon the following:

> Wendy S. Vicente, Esq.
> Food & Drug Division, OGC
> (Wendy.Vicente@fda.hhs.gov)
> Drake Cutini, Esq.
> (Drake.Cutini@usdoj.gov)
> U.S. Department of Justice
> Office of Consumer Litigation
> Room 950 North
> 1331 Pennsylvania Ave., N.W.
> Washington, D.C. 20004

> _____/s/ William A. Rakoczy_____
> William A. Rakoczy
> *Counsel for Nu-Pharm Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

NU-PHARM INC.                                          )
50 Mural Street, Units 1 and 2                         )
Richmond Hill, Ontario L4B I E4,                      )
                                                       )
          Plaintiff,                     )    Case No. 08-cv-00070 (RWR)
    v.                                             )
                                                       )
FOOD AND DRUG ADMINISTRATION                           )
5600 Fishers Lane                                      )
Rockville, Maryland 20857,                             )
                                                       )
MICHAEL O. LEAVITT                                     )
Secretary of Health and Human Services                 )
200 Independence Avenue, S.W.                           )
Washington, D.C. 20201, and                            )
                                                       )
ANDREW C. VON ESCHENBACH, M.D.                          )
Commissioner of Food and Drugs                         )
5600 Fishers Lane                                      )
Rockville, Maryland 20857,                             )
                                                       )
          Defendants.                     )
_____)

**MEMORANDUM IN SUPPORT OF NU-PHARM'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)
wrakoczy@rmmslegal.com

Dated:  January 15 , 2008

*Counsel for Nu-Pharm Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.      Statutory Background. ............................................................................................ 2

        A.      Brand Drugs – NDAs And Patent Listing Requirements. ...................... 3

        B.      Generic Drugs – ANDAs And Patent Certifications. ............................. 3

II.     Factual Background. ............................................................................................... 5

        A.      Abbott's Depakote® (Divalproex Sodium) And Orange Book Patents. ................. 5

        B.      Nu-Pharm's ANDA No. 77-615 For Divalproex Sodium Delayed-Release
                Tablets, 500 mg. ...................................................................................... 6

        C.      Contempt Proceedings Against Apotex In *Abbott v. Apotex*, No. 97-7515
                (N.D. Ill.), *To Which Nu-Pharm Was Not And Is Not A Party.* ............................. 7

        D.      FDA Unlawfully Refuses To Award Nu-Pharm Final Approval For Its
                Divalproex Sodium Delayed-Release 500 mg Tablets. ......................... 10

ARGUMENT ....................................................................................................................... 11

I.      Nu-Pharm Has A Substantial Likelihood Of Succeeding On The Merits Of Its
        Claims. .................................................................................................................... 12

        A.      Under The Plain Language Of The FFDCA, FDA Has No Lawful Basis
                For Withholding Final Approval Of Nu-Pharm's ANDA No. 77-615 For
                Divalproex Sodium 500 mg Tablets. ...................................................... 13

                1.      Under the plain language of the FFDCA, FDA may delay approval
                        if, and only if, the *Nu-Pharm* Court enters a finding and order of
                        infringement in the *Nu-Pharm* action. ....................................... 14

                2.      Courts have consistently interpreted the statute in accordance with
                        its plain language. ........................................................................ 18

        B.      FDA's Decision And Interpretation Cannot Be Squared With The
                Agency's Past Practice And Policies. ...................................................... 20

        C.      FDA's Interpretation Leads To Absurd And Inconsistent Results. ......... 22

      D.     FDA's Interpretation Permits, And Indeed Encourages, Improper Gaming And Manipulation Of The Statute.......................................................................... 24

II.     Nu-Pharm Will Suffer Substantial And Irreparable Harm If An Injunction Is Not Entered. ...................................................................................................................... 25

III.    The Balance Of Harms Weighs In Favor Of Nu-Pharm................................................ 27

IV.    An Injunction Would Further The Public Interest. ........................................................ 28

CONCLUSION............................................................................................................................. 28

## TABLE OF AUTHORITIES

### Federal Cases

*Abbott Labs. v. Apotex, Inc.*,
  455 F. Supp. 2d 831 (N.D. Ill. 2006) ................................................................ 7, 9

*Abbott Labs. v. TorPharm, Inc.*,
  122 Fed. Appx. 511, 2005 WL 406563 (Fed. Cir. Feb. 14, 2005) ............................ 8

*Abbott Labs. v. TorPharm, Inc.*,
  309 F. Supp. 2d 1043 (N.D. Ill. 2004) ................................................................ 8

*Abbott Labs. v. TorPharm, Inc.*,
  503 F.3d 1372 (Fed. Cir. 2007) ...................................................................... 10

*Alabama v. Boseman*,
  533 U.S. 146 (2001) ...................................................................................... 15

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ...................................................................... 25

*Am. Bus Ass'n v. Slater*,
  231 F.3d 1 (D.C. Cir. 2000) ........................................................................... 16

*Ass'n of Am. R.R.s v. Costle*,
  562 F.2d 1310 (D.C. Cir. 1977) ...................................................................... 15

*Ass'n of Civilian Technicians, Mont. Air Chapter No. 29 v. FLRA*,
  22 F.3d 1150 (D.C. Cir. 1994) ........................................................................ 15

* *Astrazeneca AB v. Mutual Pharm. Co.*,
  221 F. Supp. 2d 528 (E.D. Pa. 2002) ............................................................... 19

*Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*,
  474 U.S. 361 (1986) ...................................................................................... 13

*BedRoc Ltd., v. United States*,
  541 U.S. 176 (2004) ...................................................................................... 14

*Blackman v. Dist. of Columbia*,
  277 F. Supp. 2d 71 (D.D.C. 2003) ................................................................... 11

*Bush-Quayle '92 Primary Comm., Inc. v. Fed. Election Comm'n*,
  104 F.3d 448 (D.C. Cir. 1997) ........................................................................ 22

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ...................................................................................... 13

* *Authorities marked with an asterisk indicate those on which counsel chiefly rely.*

*Columbia Broad. Sys., Inc. v. FCC,*
    454 F.2d 1018 (D.C. Cir. 1971) ........................................................ 22

*Gates & Fox Co. v. Occupational Safety & Health Review Comm'n,*
    790 F.2d 154 (D.C. Cir. 1986) .......................................................... 16

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432 (1999) ......................................................................... 14

\* *Inwood Labs., Inc. v. Young,*
    723 F. Supp. 1523 (D.D.C. 1989) ............................................... 13, 24

\* *Mova Pharm. Corp. v. Shalala,*
    140 F.3d 1060 (D.C. Cir. 1998) ............................... 11, 13, 22, 23

*Mylan Labs., Inc. v. Leavitt,*
    484 F. Supp. 2d 109 (D.D.C. 2007) ................................................... 6

\* *Mylan Labs., Inc. v. Thompson,*
    332 F. Supp. 2d 106 (D.D.C. 2004) ................................................. 19

\* *Mylan Pharms., Inc. v. Thompson,*
    268 F.3d 1323 (Fed. Cir. 2001) ........................................................ 18

*Omar v. Harvey,*
    416 F. Supp. 2d 19 (D.D.C. 2006) .................................................... 11

*Phillips v. Saratoga Harness Racing, Inc.,*
    240 F.3d 174 (2d Cir. 2001) ............................................................. 22

\* *Purepac Pharm. Co. v. Thompson,*
    238 F. Supp. 2d 191 (D.D.C. 2002) ................................................. 18

*Ranbaxy Labs. v. Leavitt,*
    469 F.3d 120 (D.C. Cir. 2006) ......................................................... 24

*Ranbaxy Labs., Ltd. v. Leavitt,*
    459 F. Supp. 2d 1 (D.D.C. 2006) ..................................................... 14

*Raymen v. United Senior Ass'n,*
    No. 05-486(RBW), 2005 WL 607916 (D.D.C. Mar. 16, 2005) .............. 11

*Sandoz, Inc. v. FDA,*
    439 F. Supp. 2d 26 (D.D.C. 2006) .................................................... 27

*SEC v. Nat'l Sec., Inc.,*
    393 U.S. 453 (1969) ......................................................................... 16

\* *Teva Pharms. USA, Inc. v. FDA,*
   182 F.3d 1003 (D.C. Cir. 1999) ................................................................... passim

*TorPharm, Inc. v. Shalala,*
   No. Civ.A. 97-1925(JR), 1997 WL 33472411 (D.D.C. Sept. 15, 1997) ........................... 25, 27

\* *Valley Drug Co. v. Geneva Pharms., Inc.,*
   344 F.3d 1294 (11th Cir. 2003) ................................................................... 18

**Federal Statutes**

5 U.S.C. § 706(2)(A) ............................................................................. 2, 12

21 U.S.C. § 355(b)(1) ............................................................................ 3

21 U.S.C. § 355(c)(2) ............................................................................ 3

21 U.S.C. § 355(j)(2)(A) ......................................................................... 3

21 U.S.C. § 355(j)(2)(A)(vii) .................................................................... 3

21 U.S.C. § 355(j)(2)(B) ......................................................................... 4

\* 21 U.S.C. § 355(j)(5)(B)(iii) ................................................................. passim

35 U.S.C. § 271(e)(2)(A) ......................................................................... 4

**Federal Regulations**

21 C.F.R. § 314.53(e) ........................................................................... 3

21 C.F.R. § 314.94(a)(12)(viii)(A) ............................................................... 5, 21

Nu-Pharm Inc. ("Nu-Pharm") respectfully submits this brief in support of its motion for a temporary restraining order and/or preliminary injunction requiring FDA to immediately award final approval for Nu-Pharm's Abbreviated New Drug Application ("ANDA") No. 77-615 for divalproex sodium delayed-release 500 mg tablets.[1]

## INTRODUCTION

Nu-Pharm is entitled to immediate final approval for its ANDA for divalproex sodium delayed-release 500 mg tablets—a prescription drug currently marketed solely by Abbott under the brand-name Depakote.® Nu-Pharm has satisfied all substantive requirements for final approval under the generic drug approval provisions of the Federal Food, Drug, and Cosmetic Act ("FFDCA"). The FFDCA expressly mandates that FDA "shall" make Nu-Pharm's approval effective immediately upon expiration of the 30-month stay unless the "district court" hearing the "action" that "is brought [within the 45-day period] for infringement of the patent that is the subject of the certification" decides that the patent has been infringed. *See* 21 U.S.C. § 355(j)(5)(B)(iii). Here, Nu-Pharm's 30-month stay of approval has expired, and the district court hearing the only patent infringement action filed against Nu-Pharm for its proposed divalproex sodium product has not issued any substantive rulings of patent validity or infringement. FDA therefore has no lawful basis or authority to deny Nu-Pharm approval.

FDA nonetheless refuses to grant final approval to Nu-Pharm's ANDA, purportedly based on an order entered in a contempt proceeding in a wholly separate patent infringement action involving an entirely different ANDA and an entirely different applicant—

---

[1] In the event the Court denies such relief, Nu-Pharm respectfully moves for emergency relief pending appellate review. Specifically, in the event the Court denies Nu-Pharm's request for emergency injunctive relief, Nu-Pharm respectfully requests that any adverse FDA decision be stayed and that Nu-Pharm's 500 mg product be finally approved pending review by, and appeal of this matter to, the United States Court of Appeals for the D.C. Circuit, in order to prevent devastating and irreparable harm to Nu-Pharm.

an action and proceeding to which Nu-Pharm was not a party and did not participate. FDA's decision is arbitrary, capricious, and contrary to law, in clear violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Under the only proper construction of the FFDCA, Nu-Pharm's divalproex sodium 500 mg ANDA is entitled to immediate final approval. Indeed, the plain language compels this result. Consequently, Nu-Pharm has a strong likelihood of succeeding on the merits of its claim. Furthermore, Nu-Pharm will suffer severe and irreparable harm absent the requested relief; the balance of harm weighs in favor of granting this relief; and such relief is in the public interest. Accordingly, this Court should enter a temporary restraining order and/or preliminary injunction requiring FDA to award immediate final approval to Nu-Pharm's ANDA for divalproex sodium 500 mg tablets, which will permit Nu-Pharm to begin marketing its lower-priced generic product promptly after the expiration of Abbott's patents on January 29, 2008.[2]

## **BACKGROUND**

### I.    **Statutory Background.**

This action arises under the FFDCA, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified as amended at 21 U.S.C. § 355 and 35 U.S.C. § 271) ("Hatch-Waxman") and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, § 1102(b)(1), Pub. L. No. 108-173, 117 Stat. 2066 (2003) (codified as amended at 21 U.S.C. § 355 and 35 U.S.C. § 271) ("MMA").

---

[2] Nu-Pharm does not seek to, and will not, market its product until *after* expiration of Abbott's patents on January 29, 2008. (*See* Rakoczy Decl. Ex. D, Benyak Decl. ¶ 6 n.1.)

A.    **Brand Drugs – NDAs And Patent Listing Requirements.**

A company that seeks to sell a new drug must file with FDA a New Drug Application ("NDA").  The applicant must include in its NDA, *inter alia*, technical data on the composition of the drug, the means for manufacturing it, clinical trial results establishing its safety and effectiveness, and labeling describing the use for which approval is requested.  *See* 21 U.S.C. § 355(b)(1).  The applicant also must submit information to FDA with respect to any patent that "claims the drug for which the application was submitted or which claims a method of using such drug . . . ."  *Id.*; *see also* 21 U.S.C. § 355(c)(2).  FDA publishes all such patent information in the "Orange Book."  *See* 21 C.F.R. § 314.53(e).

B.    **Generic Drugs – ANDAs And Patent Certifications.**

Before 1984, a company seeking to market a generic version of an FDA-approved NDA drug had to complete expensive and time-consuming safety and efficacy studies on the drug, even though the NDA-holder already had established the drug's safety and efficacy.  In 1984, Congress simplified the procedure for obtaining approval of generic drugs with the Hatch-Waxman Amendments to the FFDCA.  Under Hatch-Waxman, "an abbreviated new drug application process allows applicants . . . to proceed more quickly to the marketplace."  *Teva Pharms. USA, Inc. v. FDA*, 182 F.3d 1003, 1004 (D.C. Cir. 1999).

An ANDA applicant must establish that its generic drug product is bioequivalent to the NDA drug.  *See* 21 U.S.C. § 355(j)(2)(A).  The ANDA also must include a "certification" to any properly-listed Orange Book patent.  *See* 21 U.S.C. § 355(j)(2)(A)(vii).  The statute provides four certification options, only one of which is relevant here:  that the listed patent is invalid and/or will not be infringed by the proposed drug, a so-called "paragraph IV certification."  *Id.*  With certain exceptions not applicable here, an ANDA applicant seeking FDA approval to market its generic drug prior to the expiration of the Orange Book-listed patent

must submit a paragraph IV certification and notify the patentee and NDA-holder of the factual and legal bases for that certification.  *See* 21 U.S.C. § 355(j)(2)(B).  The submission of an ANDA with a paragraph IV certification constitutes a technical act of infringement under 35 U.S.C. § 271(e)(2)(A), which permits the patent owner to file, and a district court to adjudicate, a suit to determine whether the proposed generic drug infringes the subject patent before the drug has actually been marketed.

The timing of ANDA approval depends, in part, on whether such a suit is filed by the patent owner within 45 days of receiving notice of the ANDA and paragraph IV certification. The statute reads in relevant part:

> If the applicant made a [paragraph IV certification], *the approval **shall** be made effective immediately unless,* before the expiration of 45 days after the date on which the notice described in paragraph (2)(B) is received, *an action is brought for infringement of the patent that is the subject of the certification* and for which information was submitted to the Secretary under subsection (b)(1) or (c)(2) of this section before the date on which the application (excluding an amendment or supplement to the application), which the Secretary later determines to be substantially complete, was submitted.  If such an action is brought before the expiration of such days, *the approval **shall** be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i)* or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that –
>
> (II)  if before the expiration of such period the district court decides that the patent has been infringed . . . .

21 U.S.C. § 355(j)(5)(B)(iii) (emphasis added).

Thus, where the applicant submits an ANDA with a paragraph IV certification, FDA "shall" make the approval effective immediately, unless "an action is brought for infringement of the patent that is the subject of the certification."  *Id*.  If such "action" is brought within the 45-day period after the patent owner and NDA-holder receive notice of the paragraph IV ANDA, "the approval shall be made effective upon the expiration of the thirty-month period

beginning on the date of the receipt of the notice." *Id*. This instruction is mandatory—FDA has no discretion because the approval "*shall* be made effective" upon expiration of the 30-month stay. *Id*. (emphasis added). The only relevant exception is where "the district court" hearing the "action" that "is brought [within the 45-day period] for infringement of the patent that is the subject of the certification" decides that the patent is infringed before the expiration of the 30-month stay.[3] Only in these circumstances may FDA further delay or withhold approval. *See id*.; *see also* Rakoczy Decl. Ex. A, 2004 FDA Draft Guidance at 5)[4] (acknowledging that approval may be delayed based on an order by "the district court hearing a patent infringement suit resulting from a paragraph IV certification"); 21 C.F.R. § 314.94(a)(12)(viii)(A) (requiring ANDA applicant to amend its patent certification "if a final judgment in the action against the applicant is entered finding the patent to be infringed.").

## II.    Factual Background.

### A.    Abbott's Depakote® (Divalproex Sodium) And Orange Book Patents.

At issue here is the prescription drug divalproex sodium, which Abbott currently markets under the brand-name Depakote®. FDA first approved Depakote® on March 10, 1983, for the treatment of epilepsy. Abbott submitted information to FDA on two patents for listing in the Orange Book in connection with Depakote®: U.S. Patent Nos. 4,988,731 ("the '731 patent") and 5,212,326 ("the '326 patent"). (*See* Rakoczy Decl. Ex. B, Depakote® Orange Book Listing.) Both the '731 and '326 patents naturally expire on January 29, 2008. Abbott also has been

---

[3] The court may also delay approval based on the parties' failure to cooperate in expediting the action, or if a preliminary injunction is entered, 21 U.S.C. § 355(j)(5)(B)(iii), but neither is applicable here.

[4] All references to "Rakoczy Decl." herein refer to the Declaration of William A. Rakoczy, submitted concurrently herewith.

awarded a period of pediatric exclusivity in connection with its Depakote® products that, to the extent applicable, expires July 29, 2008.[5]  (*See id.*)

### B.    Nu-Pharm's ANDA No. 77-615 For Divalproex Sodium Delayed-Release Tablets, 500 mg.

On March 7, 2005, Nu-Pharm submitted ANDA No. 77-615 for divalproex sodium delayed-release tablets in the 500 mg strength.[6]  (Rakoczy Decl. Ex. D, Benyak Decl. ¶ 3.)  Nu-Pharm has satisfied all substantive requirements for approval.  (*Id.*)  Nu-Pharm's ANDA contains a paragraph IV certification to both the '731 and '326 patents.  (*Id.* ¶ 4.)  Nu-Pharm's ANDA also designates and identifies Apotex Inc. of Ontario, Canada, as the contract manufacturer for the finished drug product.  (*Id.* ¶ 3.)  As required by statute and regulation, Nu-Pharm duly notified Abbott of its paragraph IV certifications, along with the legal and factual bases for its certifications, in a notice letter received by Abbott on May 13, 2005.  (*Id.* ¶ 4.)  In response, on June 24, 2005, Abbott sued Nu-Pharm for alleged infringement of the '731 and '326 patents under 35 U.S.C. § 271(e)(2)(A) in the United States District Court for the Northern District of Illinois, Eastern Division (hereinafter, "the *Nu-Pharm* action" or "the *Nu-Pharm* Court").  *See Abbott Labs. v. Nu-Pharm Inc.*, No. 05-3714 (N.D. Ill.) (Pallmeyer, J.)  This action triggered a 30-month stay of FDA approval of Nu-Pharm's 500 mg tablet ANDA, which expired

---

[5] This period of pediatric exclusivity can apply only to ANDAs that do not have final effective approval before the natural expiration of the '731 and '326 patents on January 29, 2008.  (*See* Rakoczy Decl. Ex. C, Apr. 18, 2007 FDA Letter to Amlodipine Besylate ANDA Applicants, at 5 n.4 (citing 21 U.S.C. § 355a) (concluding that ANDAs with final approval upon patent expiration are "not blocked by [a brand manufacturer's] pediatric exclusivity . . . under the literal terms of the [pediatric exclusivity] statute")); *see also Mylan Labs., Inc. v. Leavitt*, 484 F. Supp. 2d 109, 120-21 (D.D.C. 2007).

[6] Nu-Pharm subsequently amended its divalproex sodium ANDA to also include the 125 mg and 250 mg strengths.  Those products, however, are not at issue here and, therefore, are not further addressed.

on November 13, 2007—30 months after Abbott received Nu-Pharm's notice of paragraph IV certification.

The *Nu-Pharm* action is the one and only patent infringement action that Abbott filed in response to the submission of Nu-Pharm's paragraph IV ANDA. The *Nu-Pharm* Court has not entered any substantive rulings or orders on the merits of the patent infringement dispute, and certainly has not made any determination of patent infringement or validity. In fact, as discussed below, on October 16, 2006, the *Nu-Pharm* Court stayed the *Nu-Pharm* action in its entirety pending resolution of contempt proceedings against an unrelated third-party (Apotex) in another matter involving the same patents but a different ANDA, also discussed below. (*See* Rakoczy Decl. Ex. E, Oct. 16, 2006 Docket Entry.) To date, the *Nu-Pharm* action remains stayed. (*See id.* Ex. F, Oct. 31, 2007, Jan. 4, 2008, and Jan. 14, 2008 Docket Entries.)

C.    **Contempt Proceedings Against Apotex In *Abbott v. Apotex*, No. 97-7515 (N.D. Ill.), *To Which Nu-Pharm Was Not And Is Not A Party.***

In a contempt proceeding in a wholly separate action against a different generic company (Apotex), *to which Nu-Pharm is not and was **not** a party*, a different district court "extended" an injunction order involving an entirely different ANDA filed by Apotex (ANDA No. 75-112) to cover Nu-Pharm's ANDA No. 77-615. *See Abbott Labs. v. Apotex, Inc.*, 455 F. Supp. 2d 831, 840 (N.D. Ill. 2006); *see also* Rakoczy Decl. Ex. G, Oct. 6, 2006 Docket Entry and Injunction Order, entered in *Abbott Labs. v. Apotex, Inc.*, No. 97-7515 (N.D. Ill.) (Posner, J.) (hereinafter "the *Apotex* Court" or "the *Apotex* action"). The *Apotex* Court also ordered that the effective date of approval of the Nu-Pharm ANDA No. 77-615 shall not be earlier than expiration of the '731 and '326 patents on January 29, 2008. (*See* Rakoczy Decl. Ex. G, Oct. 6, 2006 Injunction Order.) Significantly, however, Nu-Pharm was not and is not a party to the *Apotex* action in any manner. Nor did the *Apotex* action arise from the filing of Nu-Pharm's

paragraph IV ANDA. Rather, the *Apotex* action involved, and jurisdiction was based on, a completely different paragraph IV ANDA filed by Apotex, **not** *Nu-Pharm*.

By way of background, the *Apotex* action arises out of the April 1997 submission of Apotex's ANDA No. 75-112 for divalproex sodium delayed-release tablets. Apotex's ANDA No. 75-112 also included paragraph IV certifications to the '731 and '326 patents. In response, Abbott sued Apotex for alleged infringement in Illinois. After a trial and two appeals, the Apotex ANDA was eventually held to infringe the '731 and '326 patents. *See Abbott Labs. v. TorPharm, Inc*., 309 F. Supp. 2d 1043, 1054 (N.D. Ill. 2004).[7] As a result, the *Apotex* Court entered an order enjoining the commercial manufacture, sale, and use of the products described in Apotex's ANDA No. 75-112, and also delayed the effective date of approval, until expiration of Abbott's '731 and '326 patents on January 29, 2008. The original order states:

> TorPharm, Inc., Apotex, Inc., and Apotex Corp., and their respective affiliates, successors in interest, and assigns are enjoined from commercially manufacturing, using, selling, or offering to sell generic divalproex sodium which the Court has found to be infringing within the United States, or from importing such product into the United States, until Abbott's U.S. Patent Nos. 4,988,731 and 5,212,326 expire and defendants have received final approval from FDA to market generic divalproex sodium.
>
> The effective date of any approval by FDA of ANDA No. 75-112, or any other application concerning defendants' generic divalproex sodium which the Court has found to be infringing, shall be no earlier than January 29, 2008, the date of expiration of Abbott's U.S. Patent Nos. 4,988,731 and 5,212,316.

(Rakoczy Decl. Ex. H, March 31, 2004 Injunction Order). But once again, Nu-Pharm was never a party to—and never participated in—the *Apotex* action, which was completed before Nu-Pharm ever submitted its own ANDA.

---

[7] The Federal Circuit subsequently affirmed this judgment without opinion on February 14, 2005. *See Abbott Labs. v. TorPharm, Inc*., 122 Fed. Appx. 511, 2005 WL 406563 at *1 (Fed. Cir. Feb. 14, 2005), *reh'g denied*, Mar. 9, 2005.

After the completion of fact discovery in the current and unrelated *Nu-Pharm* action, NuPharm filed a motion for summary judgment of non-infringement before the *Nu-Pharm* Court. That same day, however, rather than respond to Nu-Pharm's summary judgment motion, Abbott initiated contempt proceedings in the old *Apotex* action against Apotex.[8] In particular, Abbott filed a motion to enforce the prior injunction order against Apotex in the *Apotex* action, and requested that the *Apotex* Court "extend" its injunction over Apotex's old ANDA No. 75-112 to cover and "embrace" Nu-Pharm's wholly separate ANDA No. 77-615. Abbott also filed a motion to stay the *Nu-Pharm* action, which the *Nu-Pharm* Court subsequently granted, and the *Nu-Pharm* action has been stayed ever since. (*See* Rakoczy Decl. Ex. I, Aug. 17, 2006 Docket Entry; *see also id*. Exs. E and F.)

Meanwhile, the *Apotex* Court conducted a one-day summary contempt proceeding in the *Apotex* action, and refused to allow Apotex any time to conduct additional testing and to submit additional evidence. Again, Nu-Pharm was not a party to the *Apotex* action and did not participate in the contempt proceedings to any extent.

On October 6, 2006, despite the fact that Nu-Pharm was not a party to the *Apotex* action or the contempt proceedings, the *Apotex* Court nonetheless granted Abbott's motion, entered a contempt order, and "extend[ed] the injunction" over Apotex's ANDA to cover and "embrace" Nu-Pharm's ANDA as well. *Abbott Labs*., 455 F. Supp. 2d at 840; Rakoczy Decl. Ex. G, Oct. 6, 2006 Docket Entry. The *Apotex* Court's "extended injunction" states:

> Apotex, Inc., Apotex Corp., and their respective affiliates, successors in interest, and assigns are enjoined from commercially manufacturing, using, selling, or offering to sell generic divalproex sodium which the Court has found to be infringing, including divalproex sodium products synthesized using the processes employed in connection with ANDA No. 77-615, within the United States, or

---

[8] Abbott clearly did so because Nu-Pharm's summary judgment motion contained unequivocal evidence of non-infringement.

from importing such products into the United States, until Abbott's U.S. Patent Nos. 4,988,731 and 5,212,326 expire and defendants have received final approval from FDA to market generic divalproex sodium.

The effective date of any approval by FDA of ANDA Nos. 75-112 and 77-615, or any other application concerning defendants' generic divalproex sodium which the Court has found to be infringing, shall be no earlier than January 29, 2008, the date of expiration of Abbott's U.S. Patent Nos. 4,988,731 and 5,212,326.

(Rakoczy Decl. Ex. G, Oct. 6, 2006 Injunction Order.)  While this new order does not mention Nu-Pharm by name, it does identify Nu-Pharm's ANDA No. 77-615.

Apotex timely appealed the contempt order and new injunction to the Federal Circuit.  On October 11, 2007, the Federal Circuit rightly reversed the *Apotex* Court's finding of contempt against Apotex because the injunction did not preclude or otherwise forbid the filing of another ANDA by Nu-Pharm or Apotex.  *See Abbott Labs. v. TorPharm, Inc*., 503 F.3d 1372, 1382-83 (Fed. Cir. 2007).  The Federal Circuit, however, affirmed the extension of the injunction to cover Nu-Pharm's ANDA.  *Id*. at 1381.  The Federal Circuit recently denied Apotex's petition for rehearing *en banc*.  Apotex has filed a petition for a writ of *certiorari* to the United States Supreme Court.  That petition remains pending.

### D.    FDA Unlawfully Refuses To Award Nu-Pharm Final Approval For Its Divalproex Sodium Delayed-Release 500 mg Tablets.

After the 30-month stay for Nu-Pharm's 500 mg product expired on November 13, 2007, Nu-Pharm requested, and expected to receive, final FDA approval.  (*See* Rakoczy Decl. Ex. D, Benyak Decl. ¶ 6.)  But on December 11, 2007, the Agency informed Nu-Pharm that it would not grant a final approval based on the order in the *Apotex* action.  (*Id*. ¶ 6.)  On December 21, 2007, Nu-Pharm made a detailed written submission requesting immediate final approval on the ground that FDA has no lawful basis or authority to withhold final approval where, as here, the 30-month stay has expired and the *Nu-Pharm* Court has not made any finding of infringement or validity.  (*See* Rakoczy Decl. Ex. J, Dec. 21, 2007 Ltr. to Buehler).  On

January 9, 2008, FDA informed Nu-Pharm that it would not issue such an approval solely based

on the *Apotex* Court's order.  (*See id*. Ex. D, Benyak Decl. ¶ 6.)  Nu-Pharm now challenges this

Agency decision.

## ARGUMENT

Courts must weigh four factors in deciding whether to grant a preliminary

injunction or temporary restraining order:  (1) the likelihood that the moving party will prevail

on the merits; (2) the prospect of irreparable injury to the moving party if relief is withheld;

(3) the possibility of substantial harm to other parties if relief is granted; and (4) the public

interest.  *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998); *Raymen v.*

*United Senior Ass'n*, No. 05-486(RBW), 2005 WL 607916, at *2 (D.D.C. Mar. 16, 2005)

(granting temporary restraining order).  The movant "need not prevail on each factor in order to

receive injunctive relief."  *Raymen*, 2005 WL 607916, at *2.  "Rather . . . the factors must be

viewed as a continuum, with more of one factor compensating for less of another.   If the

arguments for one factor are particularly strong, an injunction may issue even if the arguments in

other areas are rather weak."  *Blackman v. Dist. of Columbia*, 277 F. Supp. 2d 71, 77-78 (D.D.C.

2003) (internal quotations and citation omitted) (granting preliminary injunction).

"[I]ssuing an injunction may be justified 'where there is a particularly strong

likelihood of success on the merits even if there is a relatively slight showing of irreparable

injury.'"  *Raymen*, 2005 WL 607916, at *2 (quoting *Blackman*, 277 F. Supp. 2d at 78).

Moreover, "[i]n cases that raise questions 'going to the merits so serious, substantial, difficult

and doubtful, as to make them fair ground . . . for more deliberative investigation,' . . . courts

should eschew an 'exaggeratedly refined analysis of the merits at an early stage in the

litigation.'"  *Omar v. Harvey*, 416 F. Supp. 2d 19, 22 (D.D.C. 2006) (quoting *Wash. Metro. Area*

*Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).  Nu-Pharm satisfies

this standard here.

**I.      Nu-Pharm Has A Substantial Likelihood Of Succeeding On The Merits Of Its Claims.**

Under the APA, the Court must set aside FDA's decision because it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A).  As FDA must concede, Nu-Pharm has satisfied all substantive requirements for final

approval of its 500 mg product, and the only 30-month stay of FDA approval has expired.

Moreover, the only relevant court—namely, the *Nu-Pharm* Court hearing the *Nu-Pharm* action

arising out of Nu-Pharm's paragraph IV ANDA—has not entered any substantive orders, much

less any finding of infringement.  In these circumstances, the statute admits of no discretion, and

mandates that FDA "shall" make Nu-Pharm's approval effective immediately.  But FDA has

withheld Nu-Pharm's final approval solely on the basis of a court order and injunction entered in

the *Apotex* action to which Nu-Pharm was not and is not a party, and which arises from a

paragraph IV ANDA filed by Apotex, not Nu-Pharm.  Under the plain language of the statute

and FDA's own precedent, the order entered against Apotex in the *Apotex* action cannot be used

to delay Nu-Pharm's approval.  FDA's decision therefore is arbitrary, capricious, and contrary to

law.

*First*, FDA's decision runs afoul of the plain language of the FFDCA because the

statute—properly interpreted in view of its plain language and its underlying purpose—requires

FDA to award final approval to a pending ANDA as soon as the 30-month stay has expired, so

long as the court hearing that ANDA applicant's patent case has entered no order delaying such

approval.  *Second*, FDA's decision departs from its own precedent, under which it has construed

the statute to delay final ANDA approval based solely on an order from the court hearing the

patent infringement action arising from that applicant's paragraph IV ANDA. Indeed, to Nu-Pharm's knowledge, FDA has *never* found a court decision of either infringement or non-infringement in one ANDA-filer's litigation to open or close the market to other generic ANDA-filers for the same product. *Third*, FDA's decision and interpretation leads to fundamentally absurd and inconsistent results. And *fourth*, FDA's interpretation permits, and indeed encourages, improper gaming and manipulation of the statute. Nu-Pharm, therefore, has a strong likelihood of succeeding on the merits of its case.

   A.    **Under The Plain Language Of The FFDCA, FDA Has No Lawful Basis For Withholding Final Approval Of Nu-Pharm's ANDA No. 77-615 For Divalproex Sodium 500 mg Tablets.**

        To determine whether FDA's decision comports with the statute, this Court must determine first "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. "When the statute is clear on its face, resort to the legislative history, much less to the agency's interpretation, is not necessary." *Inwood Labs., Inc. v. Young*, 723 F. Supp. 1523, 1525 (D.D.C. 1989); *see also Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp*., 474 U.S. 361, 368 (1986) ("The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress."). Where the statute is clear and unambiguous, the Court "do[es] not defer to the agency's interpretation of the statute." *Mova*, 140 F.3d at 1068.

        In this case, the intent of Congress could not be clearer: the statute expressly provides that, with certain exceptions not applicable here, if, "before the expiration of [the 45-day period], *an action is brought for infringement of the patent that is the subject of the certification . . . the approval* **shall** *be made effective upon the expiration of the thirty-month*

-13-

*[stay]*." 21 U.S.C. § 355(j)(5)(B)(iii) (emphasis added).  The only 30-month stay of Nu-Pharm's

approval admittedly has expired, and no exception applies.  Nu-Pharm therefore is entitled to

immediate final approval under the plain and unambiguous language of the statute.

> **1.      Under the plain language of the FFDCA, FDA may delay approval if, and only if, the *Nu-Pharm* Court enters a finding and order of infringement in the *Nu-Pharm* action.**

"The preeminent canon of statutory interpretation requires [the courts] to

presume that the legislature says in a statute what it means and means in a statute what it says

there."  *BedRoc Ltd., v. United States*, 541 U.S. 176, 183 (2004) (quotations and citation

omitted).  "When the words of a statute are unambiguous then, this first canon is also the last:

judicial inquiry is complete."  *Ranbaxy Labs., Ltd. v. Leavitt*, 459 F. Supp. 2d 1, 8 (D.D.C. 2006)

(quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).  Here, Congress has spoken

to the issue at hand.  As such, this Court's analysis must begin and end with the plain language

of the statute.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).  The relevant

provision states:

> If the applicant made a [paragraph IV certification], the approval shall be made effective immediately unless, before the expiration of 45 days after the date on which the notice described in paragraph (2)(B) is received, *an action is brought for infringement of the patent that is the subject of the certification* . . . .  If such an action is brought before the expiration of such days, *the **approval shall be made effective** upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i)* or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that –
>
> (II)  if before the expiration of such period the district court decides that the patent has been infringed . . . .

21 U.S.C. § 355(j)(5)(B)(iii) (emphasis added).

Under the plain language of the statute, where, as here, an applicant submits an

ANDA with a paragraph IV certification, FDA "shall" make the approval effective immediately,

unless "an action is brought for infringement of the patent that is the subject of the certification." *Id*. If such an action is brought within the 45-day period after the patent owner and NDA-holder receive notice of the paragraph IV ANDA, "the approval shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice." *Id*. This instruction is mandatory—the approval "*shall* be made effective" upon expiration of the 30-month stay. *Id*. (emphasis added).

As the Supreme Court has instructed, "[t]he word 'shall' is ordinarily the language of command." *Alabama v. Boseman*, 533 U.S. 146, 153 (2001) (internal quotations and citation omitted). The D.C. Circuit similarly has held, "[t]he word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive." *Ass'n of Civilian Technicians, Mont. Air Chapter No. 29 v. FLRA*, 22 F.3d 1150, 1153 (D.C. Cir. 1994); *see also Ass'n of Am. R.R.s v. Costle*, 562 F.2d 1310, 1312 (D.C. Cir. 1977) ("The word 'shall' is the language of command in a statute"). So, too, here. Unless a specific exception applies (and none do here), the statute imposes a mandatory duty and obligation upon FDA to approve the ANDA upon expiration of the 30-month stay.

The only relevant statutory exception, apparently invoked by FDA here, is where the "district court" hearing the "action [that] is brought [within the 45-day period] for infringement of the patent that is the subject of the certification . . . decides that the patent has been infringed." 21 U.S.C. § 355(j)(5)(B)(iii). But this exception does not, and indeed cannot, apply to the facts of this case. Congress went to great lengths to identify the particular "action" and "court" that matter for purposes of delaying approval. The only "action" referred to is the one that "is brought for infringement of the patent that is the subject of the certification," and even more specifically, the "action" brought "before the expiration of 45 days after the date on

which the [paragraph IV notice] is received." *Id.* In other words, for purposes of ANDA approval, the only action that matters is the one brought against the particular ANDA applicant within the 45-day period for infringement of the patent that is the subject of the applicant's paragraph IV certification.

Congress likewise employed specific language and context to identify the exact "court" that matters. It is not just *any* district court or "*a* district court," but rather "*the* district court" hearing the "action" that "is brought for infringement of the patent that is the subject of the certification," and also which is brought "before the expiration of 45 days after the date on which the [paragraph IV notice] is received." 21 U.S.C. § 355(j)(5)(B)(iii). *See SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 466 (1969) ("The meaning of particular phrases must be determined in context."). "It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (quotation and citation omitted) (finding that agency lacked authority to authorize money damages under unambiguous terms of statute that set forth "the remedies" available to persons subject to discrimination); *see also Gates & Fox Co. v. Occupational Safety & Health Review Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986) (Scalia, J.) (stating that, where regulation required self-rescuers on "'*the* haulage equipment,'--the definite article ['the'] suggest[s] that some specific haulage equipment is referred to, rather than merely haulage equipment in general"). In other words, the only relevant "district court" for purposes of delaying the date of effective ANDA approval under the statute is "*the* district court" hearing the patent infringement action filed under 35 U.S.C. § 271(e)(2)(A) by the patent owner and NDA-holder within the 45-day period against the ANDA applicant whose paragraph IV certification and notice gave rise to the suit.

The application of this statutory provision to Nu-Pharm's ANDA is straightforward and simple. Nu-Pharm filed an ANDA containing a paragraph IV certification and provided the requisite notice to Abbott, the NDA-holder and patent owner. Within 45 days of receiving that notice, Abbott filed the *Nu-Pharm* action for infringement of the patents that are the subject of Nu-Pharm's paragraph IV certification. The filing of the *Nu-Pharm* action stayed the approval of Nu-Pharm's ANDA for 30-months from the receipt of Abbott's notice of Nu-Pharm's paragraph IV certification. That 30-month period expired on November 13, 2007. Thus, Nu-Pharm's "approval *shall* be made effective" immediately unless "*the* district court" hearing the "action" that "is brought [within the 45-day period] for infringement of the patent that is the subject of the certification," decides that the patent has been infringed. 21 U.S.C. § 355(j)(5)(B)(iii) (emphasis added). In this case, of course, "the district court" and "action" refer solely to the *Nu-Pharm* Court and the *Nu-Pharm* action, respectively. The *Nu-Pharm* Court is the only court hearing the *Nu-Pharm* action that was brought by Abbott within the 45-day period for infringement of the patents that are the subject of Nu-Pharm's paragraph IV certifications. But the *Nu-Pharm* Court has not decided that the patents are infringed, and in fact has made <u>no</u> substantive rulings of any kind in the *Nu-Pharm* action.

The plain language of the statute, therefore, requires FDA to make Nu-Pharm's approval effective immediately. FDA has no lawful basis or authority to continue delaying Nu-Pharm's approval, and certainly not based on any order entered by the *Apotex* Court in the *Apotex* action. The *Apotex* Court admittedly is not the court hearing the action brought within the 45-day period based on Nu-Pharm's paragraph IV certification. The Agency's refusal to approve Nu-Pharm's ANDA therefore violates the plain and unambiguous language of the FFDCA and must thus be set aside.

### 2. Courts have consistently interpreted the statute in accordance with its plain language.

FDA's refusal to approve Nu-Pharm's 500 mg divalproex sodium tablets also conflicts with the manner in which courts have consistently interpreted the relevant terms of § 355(j)(5)(B)(iii). Indeed, courts always have construed the term "court" to mean the court that is hearing the infringement action that arises out of and is the subject of that particular ANDA applicant's paragraph IV certification. For example, in describing the framework of the statutory provision at issue here, the Eleventh Circuit stated:

> **If the court hearing the infringement action** declares the patent invalid or not infringed, this automatic [30-month] delay in FDA approval terminates, 21 U.S.C. § 355(j)(5)(B)(iii)(I), or, if **the court** finds the patent valid and infringed, the approval date will be set for a date on or after the patent's expiration, 21 U.S.C. § 355(j)(5)(B)(iii)(II); 35 U.S.C. § 271(e)(4)(A).

*Valley Drug Co. v. Geneva Pharms., Inc.,* 344 F.3d 1294, 1297 (11th Cir. 2003) (emphasis added). The Federal Circuit has interpreted the statute in similar fashion:

> If the patentee files suit within [the 45-day] period, the FDA may not approve the ANDA until the expiration of the patent, judicial resolution of the infringement suit, a judicial determination that the patent is invalid or unenforceable, or thirty months from the patentee's receipt of notice, whichever is earliest. **The court in which the suit is pending** may order a shorter or longer stay on the approval time, if 'either party to the action fails to reasonably cooperate in expediting the action.' 21 U.S.C. § 355(j)(5)(B)(iii).

*Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1327 (Fed. Cir. 2001) (emphasis added) (internal citation omitted).

The district courts agree. In *Purepac Pharmaceutical Co. v. Thompson*, 238 F. Supp. 2d 191 (D.D.C. 2002), where the proper interpretation of the statutory provisions governing paragraph IV certifications and their legal consequences were directly at issue, the court stated:

> If a suit is initiated, the FDA's approval of the ANDA is automatically stayed for 30 months, a period that can be lengthened or shortened **by the court hearing the**

-18-

> *case* if either party fails to 'reasonably cooperate in expediting the action.' 21 U.S.C. § 355(j)(5)(B)(iii). If, before the expiration of the 30-month stay, *the court* finds that the patent is invalid or would not be infringed by the new drug, the FDA's approval of the ANDA becomes effective on the date of that ruling.

238 F. Supp. 2d at 194-95 (emphasis added). Similarly, in *Mylan Laboratories, Inc. v. Thompson*, 332 F. Supp. 2d 106 (D.D.C. 2004), the court explained:

> If the patent holder or NDA is successful in its lawsuit, that is, *the court hearing the patent infringement litigation concludes that the patent is valid and infringed*, the Patent Code provides that 'the court shall order the effective date of any approval of the drug . . . involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed.' 35 U.S.C. § 271(e)(4)(A).

332 F. Supp. 2d at 112 (emphasis added). Finally, in interpreting § 355(j)(5)(B)(iii) in connection with an ANDA applicant's filing of a paragraph IV certification and notice requirements, another court has stated:

> If the patentee files suit, the FDA may not approve the ANDA until the patent expires, judicial resolution of the infringement action, a judicial determination that the patent is either invalid or unenforceable, or thirty months from the patentee's receipt of notice, whichever occurs first. *The Court in which the suit is pending has the authority to order a shorter or longer stay on the approval time*, if "either party to the action fail[s] to reasonably cooperate in expediting the action." 21 U.S.C. § 355(j)(5)(B)(iii).

*Astrazeneca AB v. Mutual Pharm. Co.*, 221 F. Supp. 2d 528, 530 (E.D. Pa. 2002) (internal citations omitted) (emphasis added).

In sum, the courts uniformly agree that the only court that matters, and which may be used to delay approval, is the one that is hearing the action brought against the ANDA applicant within the 45-day period for infringement of the patent that is the subject of the certification—here, the *Nu-Pharm* Court hearing the *Nu-Pharm* action. No court has ever interpreted the statute otherwise, and certainly not in any manner that would authorize FDA to delay approval based on an order entered in an action to which Nu-Pharm is not even a party.

The bottom line is that the statute authorizes FDA to delay approval solely based on a determination by the *particular* court hearing the *particular* patent infringement action involving that *particular* ANDA applicant and that *particular* ANDA applicant's proposed product.  No such court decision has been rendered in this case; the *Nu-Pharm* Court has entered *no* order of patent validity or infringement, and *no* injunction order.  The Agency's refusal to approve Nu-Pharm's 500 mg ANDA therefore violates not only the plain language of the statute, but the courts' interpretation of the statute as well.

**B.    FDA's Decision And Interpretation Cannot Be Squared With The Agency's Past Practice And Policies.**

To Nu-Pharm's knowledge, FDA has never interpreted the term "court" or "action" in § 355(j)(5)(B)(iii) to mean separate, unrelated actions brought against other ANDA-filers.  More specifically, FDA has never delayed one ANDA applicant's approval based on an unfavorable decision in another, unrelated action that did not arise out of that applicant's paragraph IV certification.  Nor has FDA ever terminated a 30-month stay and approved one ANDA based on a finding of non-infringement in a separate patent case against another ANDA applicant.  Moreover, there is no question that, had the *Apotex* Court rendered a decision in favor of Apotex and found that Apotex's or Nu-Pharm's divalproex sodium products did not infringe Abbott's patents, FDA would not have terminated Nu-Pharm's stay and approved Nu-Pharm's ANDA solely on that basis.  For the same reason, FDA cannot lawfully delay Nu-Pharm's approval based solely on an order entered by the *Apotex* Court in the *Apotex* action.  FDA's refusal to award final approval to Nu-Pharm's ANDA here is thus arbitrary and capricious in light of its administrative approvals for other ANDAs.  *See Teva*, 182 F.3d at 1012 (finding that the Agency's refusal to treat a court dismissal as a trigger "was arbitrary and capricious in light of the FDA's response in another case").

Furthermore, FDA's administrative ruling conflicts directly with the Agency's prior interpretation of the statute, published in its 2004 draft Guidance for Industry and in its own regulations.  Specifically, in FDA's October 2004 draft Guidance, entitled "Listed Drugs, 30-Month Stays, and Approval of ANDAs and 505(b)(2) Applications Under Hatch-Waxman, as Amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003," the Agency expressly opined on "[w]hat court decisions and other judicial actions are relevant for lifting 30-month stays of approval on ANDAs."  (Rakoczy Decl. Ex. A, 2004 FDA Draft Guidance at 3.)  FDA interpreted § 355(j)(5)(B)(iii), in part, as follows:

> **If the district court hearing a patent infringement suit resulting from a paragraph IV certification** decides that the patent at issue is infringed, and this decision is not appealed or is affirmed on appeal, the ANDA . . . may be approved based on the district court's ruling in accordance with the patent's expiration and any extension or exclusivity that remains.

(*Id*. at 5) (emphasis added).  FDA thus confirmed that the statutory text of § 355(j)(5)(B)(iii), as amended by the MMA, supports just one interpretation:  namely, that only a decision of infringement by the district court hearing the patent infringement action resulting from the ANDA-filer's paragraph IV certification may delay final approval of that applicant's ANDA.

This interpretation comports with the plain language of the statute and the manner in which courts have consistently interpreted the terms of this statutory provision.  It also comports with the Agency's own implementing regulations, which provide that an ANDA applicant shall amend its patent certification "if a final judgment **in the action against the applicant** is entered finding the patent to be infringed."   21 C.F.R. § 314.94(a)(12)(viii)(A) (emphasis added).  Once again, the focus is on the district court hearing the infringement action arising out of the ANDA applicant's patent certification—in this case, again, the *Nu-Pharm* Court hearing the *Nu-Pharm* action.

FDA may not depart from its earlier statutory constructions without providing a reasoned basis for doing so. *See Bush-Quayle '92 Primary Comm., Inc. v. Fed. Election Comm'n*, 104 F.3d 448, 453 (D.C. Cir. 1997) ("[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored . . . ." (citation omitted)); *Columbia Broad. Sys., Inc. v. FCC*, 454 F.2d 1018, 1026 (D.C. Cir. 1971) ("[W]hen an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law."). But FDA has provided no basis, much less a reasoned one, for ignoring its prior precedent and interpretation and delaying Nu-Pharm's approval based on the *Apotex* Court's order. FDA's failure to provide justification for its current administrative position in light of its prior statutory construction is arbitrary, capricious, and contrary to law. *See Bush-Quayle '92 Primary Comm.*, 104 F.3d at 453; *Columbia Broad. Sys.*, 454 F.2d at 1026.

## C.  FDA's Interpretation Leads To Absurd And Inconsistent Results.

As courts consistently have held, "FDA must interpret the statute to avoid absurd results and further congressional intent." *Teva*, 182 F.3d at 1011; s*ee also Phillips v. Saratoga Harness Racing, Inc.*, 240 F.3d 174, 179 (2d Cir. 2001) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.") (internal quotations and citation omitted). "In deciding whether a result is absurd, [courts] consider not only whether that result is contrary to common sense, but also whether it is inconsistent with the clear intentions of the statute's drafters—that is, whether the result is absurd when considered in the particular statutory context." *Mova*, 140 F.3d at 1068.

In this case, FDA's interpretation is both:  it is contrary to common sense and inconsistent with Congressional intent.  By delaying Nu-Pharm's approval based on an order entered in another action to which Nu-Pharm is not even a party, FDA effectively has interpreted the phrase "*the* district court" to mean *any* court, and completely divorced that phrase from the context in which Congress used it in the statute.  That, FDA may not do.  *See Nat'l Securities, Inc.*, 393 U.S. at 466 ("The meaning of particular phrases must be determined in context.").  In addition to impermissible re-writing of the statute, *see Mova*, 140 F.3d at 1068 (finding that through an agency's power to interpret, the "agency does not thereby obtain a license to rewrite the statute"), FDA's interpretation also leads to absurd results that Congress could not possibly have intended.  For example, under FDA's interpretation, a judgment of infringement against an ANDA applicant in one action could be used to delay approval of other ANDA applicants in other actions.  On the flip-side, FDA could also use a favorable decision for an ANDA applicant in one case to terminate the 30-month stays of other ANDA applicants in other cases.  All of this, of course, turns the entire Hatch-Waxman system on its head, and could not have been contemplated or intended by Congress.

In sum, Congress made plain, through unambiguous language, that an applicant's approval is subject to delay solely by its own court action, not the court actions of other ANDA-filers.  Likewise, Congress made clear that an NDA-holder's remedy against an ANDA applicant lies in the action against that applicant—*not* in unrelated actions to which that applicant is not a party.  FDA's interpretation not only violates the plain language of the statute, but also leads to absurd results and abuses that are "'demonstrably at odds' with Congressional intent."  *See Mylan*, 81 F. Supp. 2d at 42.

**D.    FDA's Interpretation Permits, And Indeed Encourages, Improper Gaming And Manipulation Of The Statute.**

The courts repeatedly have struck down FDA's interpretations of Hatch-Waxman that permit the brand company to manipulate and game the system.  *See, e.g.*, *Inwood Labs.*, 723 F. Supp. at 1527 (rejecting FDA's interpretation that "subject[ed] the exclusivity entitlement to the caprices of the patent holder"); *Ranbaxy Labs. v. Leavitt*, 469 F.3d 120, 125-26 (D.C. Cir. 2006) (rejecting FDA policy that "allows an NDA holder, by delisting a patent, to deprive the generic applicant of a period of marketing exclusivity"); *see also Teva*, 182 F.3d at 1009 (questioning statutory interpretation that allows the patentee to "manipulate the system in order to block or delay generic competition").  The Court should do so here as well.

FDA's interpretation allows, and indeed encourages, blatant manipulation and gaming of the system.  In particular, FDA effectively has allowed Abbott to forestall generic competition upon expiration of its patents through a contempt proceeding against an unrelated applicant, without ever obtaining an order against Nu-Pharm in the patent litigation that Congress intended for resolution of Hatch-Waxman patent disputes.  On its face, the statute already provides NDA-holders with the means of delaying final ANDA approval for a period of up to 30 months just by filing an infringement action against a paragraph IV ANDA-filer within 45 days of receiving notice of the applicant's certification.  FDA's interpretation, however, impermissibly rewards an NDA-holder for attempting to escape a finding of non-infringement in the patent infringement action *it filed* against a particular ANDA applicant by running to an entirely different district court to extend an injunction order over an entirely different ANDA-filer and an entirely different ANDA product.  Such an outcome would be particularly unjust in this case, as Abbott's scheme was an obvious attempt to avoid Nu-Pharm's summary judgment

motion and a trial on the merits in the *Nu-Pharm* action. The only way to prevent such manipulation is to interpret the statute how it was written and intended by Congress.

## II.    Nu-Pharm Will Suffer Substantial And Irreparable Harm If An Injunction Is Not Entered.

"[W]hether or not [Nu-Pharm] has suffered irreparable injury, if it makes out its case under the APA it is entitled to a remedy." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001). Of course, Nu-Pharm has not only made its case on the merits under the APA, but it will suffer irreparable injury absent immediate injunctive relief from this Court.

"[T]imely entry into the market is critical for success in this marketplace." *TorPharm, Inc. v. Shalala*, No. Civ.A. 97-1925(JR), 1997 WL 33472411, at *4 (D.D.C. Sept. 15, 1997) (awarding injunctive relief to ANDA applicant whose approval was withheld under FDA's unlawful construction of the court decision trigger provision); *see also Teva*, 182 F.3d at 1011 n.8 (noting that Teva and Purepac would "face continued harm because of their denied access to the market"). Nu-Pharm can achieve timely entry here—shortly after the expiration of Abbott's patents on January 29, 2008—only with immediate injunctive relief from this Court. Absent such relief, Nu-Pharm's market entry will be delayed for at least another six months, resulting in devastating and unrecoverable financial loss and the effective destruction of Nu-Pharm's only U.S. business opportunity. (*See* Rakoczy Decl. Ex. D, Benyak Decl. ¶¶ 7, 9-10.)

Nu-Pharm is a small Canadian-based pharmaceutical company that markets and sells generic drug products primarily in niche markets in Canada. (Rakoczy Decl. Ex. D, Benyak Decl. ¶ 2.) Nu-Pharm's 500 mg divalproex sodium product is the company's first and only U.S. business opportunity. (*Id*. ¶ 3.) To capitalize on that opportunity, Nu-Pharm requires final approval before the natural expiration of Abbott's patents, which would permit Nu-Pharm to

begin marketing with very few competitors shortly after patent expiration, rather than waiting an additional six months for the expiration of Abbott's pediatric exclusivity. (*Id.* ¶ 7; *see also* Rakoczy Decl. Ex. C, Apr. 18, 2007 FDA Letter to Amlodipine Besylate ANDA Applicants, at 5 n.4 (noting that generic applicant with final approval prior to natural patent expiration is not subject to pediatric exclusivity).)[9]  In these circumstances, even with an authorized generic product on the market, in the first year alone, Nu-Pharm expects to generate revenues of at least $139 million if permitted to launch shortly after the expiration of Abbott's patents. (Rakoczy Decl. Ex. D, Benyak Decl. ¶ 8.)  This would be, to say the least, an enormous generic opportunity and company-transforming event for Nu-Pharm in the U.S. market. (*Id.* ¶ 7.)

But without such approval before patent expiration, Nu-Pharm will be forced to await the expiration of Abbott's six-month period of pediatric exclusivity.  In that event, Nu-Pharm will face generic competition from at least another half dozen generic applicants, most if not all of whom have considerably more market advantages and established relationships with customers, as well as a far larger number of sales representatives, that would effectively eliminate Nu-Pharm's investment and ability to compete in the ultra-competitive U.S. market. (Rakoczy Decl. Ex. D, Benyak Decl. ¶ 7.)  Under such a scenario, Nu-Pharm's projected revenues would not exceed $6.5 million—a total loss of over $132.5 million in sales during Nu-Pharm's first full year on the market. (*Id.* ¶ 9.)  Such losses are completely unrecoverable from FDA, and in fact will effectively destroy Nu-Pharm's U.S. business. (*Id.*)

Furthermore, apart from the lost opportunity for significant and company-transforming divalproex sodium sales, Nu-Pharm also will suffer unquantifiable losses and harm

---

[9] Indeed, the pediatric exclusivity statute itself provides that such exclusivity applies if, and only if, ". . . *in the patent infringement litigation resulting from the [paragraph IV] certification* the court determines that the patent is valid and would be infringed . . . ."  21 U.S.C. § 355a(b)(1)(B)(ii) (emphasis added).

to its business and reputation. (Rakoczy Decl. Ex. D, Benyak Decl. ¶ 10.) This is Nu-Pharm's first foray into the ultra-competitive generic market in the United States. Should an injunction not issue, Nu-Pharm will lose access to major customers and contracts, as well as suffer a loss of goodwill that will adversely affect Nu-Pharm's ability to compete in the United States. (*Id.*) Given Nu-Pharm's position as a new-comer to the market, these losses are "so severe as to cause extreme hardship to [Nu-Pharm's] business or threaten its very existence" and constitute imminent, significant and irreparable harm. *See Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 32 (D.D.C. 2006) (internal quotation and citation omitted); *see also TorPharm*, 1997 WL 33472411, at *4 (finding that loss in sales contingent upon plaintiff obtaining immediate approval of its ANDA were "imminent, serious, and irretrievable" and sufficed to show irreparable injury).

### III.    The Balance Of Harms Weighs In Favor Of Nu-Pharm.

FDA has no commercial stake in the outcome of this dispute. As a governmental agency, FDA is tasked with carrying out its duties consistent with the faithful and coherent interpretation of the FFDCA. FDA's interests thus are aligned with the public's interest which strongly favors injunctive relief. Yet, absent injunctive relief, Nu-Pharm stands to lose its entire U.S. business, including $132.5 million in sales, goodwill with potential customers, and other significant tangible and intangible benefits.

Moreover, if the Court grants injunctive relief, Abbott will suffer no losses which it would not naturally suffer under a proper interpretation of the statute. Abbott has failed to obtain a court decision of infringement against Nu-Pharm in the *Nu-Pharm* action, which remains pending. Abbott itself moved to stay that action while instead opting to seek relief in the *Apotex* action—all for the express purpose of avoiding any adverse disposition in the *Nu-Pharm* action. Abbott therefore has no cause to complain of harm, especially since its patents and 25-year Depakote® monopoly are set to naturally expire on January 29, 2008, in any case.

-27-

Accordingly, the balance of harms tips decidedly in favor of granting Nu-Pharm's request for a temporary restraining order and/or preliminary injunction.

## IV.    An Injunction Would Further The Public Interest.

The public interest is best served by granting the requested injunctive relief.  First, the public's interest lies in the "faithful application of the laws," *Mova*, 140 F.3d at 1066, which, here, is served by requiring the Agency to apply the governing statute in a manner that is consistent with its plain language as well as its purpose, which seeks to expedite full generic competition and prevent the patentee from "manipulat[ing] the system in order to block or delay generic competition."  *Teva*, 182 F.3d at 1009.  Second, injunctive relief comports with FDA's regulations, past practices, and policies.  Third, injunctive relief will provide consumers with a generic alternative to a widely-used anti-epileptic for which no generic product has been available for nearly 25 years.  Thus, the public interest clearly favors entry of the injunctive relief requested by Nu-Pharm.

## <u>CONCLUSION</u>

Nu-Pharm has made the requisite showing for immediate injunctive relief.  FDA's refusal to award final approval to Nu-Pharm's 500 mg divalproex sodium tablets is based on an absurd and incoherent interpretation of the statute, in contravention of the statute's plain language, the overriding purpose of Hatch-Waxman, and FDA's own precedent.  FDA had, and still has, no lawful basis to withhold Nu-Pharm's final approval, and the Agency's decision must be set aside as arbitrary, capricious and contrary to law.  Nu-Pharm therefore has made its case on the merits under the APA and is entitled to relief.  Nu-Pharm also will suffer devastating and irreparable harm to its U.S. business absent an injunction.  Accordingly, the Court should order FDA to immediately award final approval to Nu-Pharm's divalproex sodium delayed-released 500 mg tablets under ANDA No. 77-615.

In the event the Court denies such relief, Nu-Pharm respectfully moves for emergency relief pending appellate review. Specifically, in the event the Court denies Nu-Pharm's request for emergency injunctive relief, Nu-Pharm respectfully requests that any adverse FDA decision be stayed and that Nu-Pharm's 500 mg product be finally approved pending review by, and appeal of this matter to, the United States Court of Appeals for the D.C. Circuit, in order to prevent devastating and irreparable harm to Nu-Pharm.

Dated:  January 15, 2008.                         Respectfully submitted,

                                                  NU-PHARM INC.

                                        By:     */s/ William A. Rakoczy*
                                                  One of its attorneys

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Nu-Pharm Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

NU-PHARM INC.                                    )
50 Mural Street, Units 1 and 2                   )
Richmond Hill, Ontario L4B I E4,                 )
                                                 )
                        Plaintiff,               )          Case No. 08-cv-00070 (RWR)
            v.                                   )
                                                 )
FOOD AND DRUG ADMINISTRATION                     )
5600 Fishers Lane                                )
Rockville, Maryland 20857,                       )
                                                 )
MICHAEL O. LEAVITT                               )
Secretary of Health and Human Services           )
200 Independence Avenue, S.W.                     )
Washington, D.C. 20201, and                      )
                                                 )
ANDREW C. VON ESCHENBACH, M.D.                   )
Commissioner of Food and Drugs                   )
5600 Fishers Lane                                )
Rockville, Maryland 20857,                       )
                                                 )
                        Defendants.              )
_____)

## DECLARATION OF WILLIAM A. RAKOCZY

I, William A. Rakoczy, declare as follows:

1.      I am William A. Rakoczy, a partner of Rakoczy Molino Mazzochi Siwik LLP,

counsel for Plaintiff Nu-Pharm Inc. ("Nu-Pharm") in this matter.

2.      I am a practicing attorney and am a member in good standing of the bars of the

District of Columbia (2004) and the State of Illinois (1995), as well as the following courts:

United States Supreme Court (2003); the United States Courts of Appeals for the Fourth Circuit

(2005), the Third Circuit (2003), the District of Columbia Circuit (1999), the Federal Circuit

(1999), and the Seventh Circuit (1995); and the United States District Courts for the District of

Columbia (2005), the Western District of Wisconsin (2001), and Northern District of Illinois (1995).

3.      I submit this Declaration in support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction, and, in particular, to authenticate and provide to the Court certain exhibits cited and referenced in Nu-Pharm's Motion and Memorandum of Points and Authorities.

4.      I have personal knowledge of the facts stated in this Declaration and am competent to testify to the same.

5.      Attached hereto at Exhibit A is a true and correct copy of FDA's October 2004 draft Guidance For Industry, entitled "Listed Drugs, 30-Month Stays, and Approval of ANDAs and 505(b)(2) Applications Under Hatch-Waxman, as Amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.

6.      Attached hereto at Exhibit B is a true and correct copy of the electronic Orange Book listing for Depakote® (divalproex sodium) delayed-release tablets, 500 mg.

7.      Attached hereto at Exhibit C is a true and correct copy of an April 18, 2007 Letter from Gary J. Buehler, Director, Office of Generic Drugs, to ANDA Applicants for Amlodipine Besylate Tablets.

8.      Attached hereto at Exhibit D is a true and correct copy of the Declaration of Richard Benyak, President of Nu-Pharm Inc.

9.      Attached hereto at Exhibit E is a true and correct copy of the October 16, 2006 Docket Entry granting Abbott Laboratories' motion to stay proceedings in *Abbott Laboratories v. Nu-Pharm Inc*., No. 05 C 3714 (N.D. Ill.) (Pallmeyer, J.).

10.    Attached hereto at Exhibit F is a true and correct copy of the October 31, 2007 Docket Entry stating that a stay of proceedings remains in place in *Abbott Laboratories v. Nu-Pharm Inc*., No. 05 C 3714 (N.D. Ill.) (Pallmeyer, J.).  Also attached at Exhibit F are true and correct copies of the January 4, 2008 Docket Entry in the same matter resetting the January 8 status hearing to January 14, 2008, and the January 14, 2008 Docket Entry noting that a status hearing was held and that another status hearing is set for April 17, 2008.  To date, no substantive rulings on patent infringement or validity have been rendered, and a stay remains in place, in *Abbott Laboratories v. Nu-Pharm Inc*., No. 05 C 3714 (N.D. Ill.) (Pallmeyer, J.).

11.    Attached hereto at Exhibit G is a true and correct copy of the October 6, 2006 Docket Entry and Injunction Order entered in *Abbott Laboratories v. Apotex, Inc*., No. 97 C 7515 (N.D. Ill.) (Posner, J.).

12.    Attached hereto at Exhibit H is a true and correct copy of the March 31, 2004 Judgment and Injunction Order entered in *Abbott Laboratories v. Apotex, Inc*., No. 97 C 7515 (N.D. Ill.) (Posner, J.).

13.    Attached hereto at Exhibit I is a true and correct copy of the August 17, 2006 Docket Entry entering a stay of proceedings in *Abbott Laboratories v. Nu-Pharm Inc*., No. 05 C 3714 (N.D. Ill.) (Pallmeyer, J.).

14.    Attached hereto at Exhibit J is a true and correct copy of the December 21, 2007 letter to Gary Buehler, Director, Office of Generic Drugs, requesting final effective approval of Nu-Pharm's divalproex sodium delayed-release 500 mg tablets under ANDA No. 77-615.

15.    The foregoing facts are true and correct as I verify and believe.

Dated this 15th day of January, 2008.

I, WILLIAM A. RAKOCZY, hereby declare, under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America, that the foregoing Declaration is true and correct.

_____*/s/ William A. Rakoczy*_____
William A. Rakoczy

# Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit A

# Guidance for Industry

## Listed Drugs, 30-Month Stays, and Approval of ANDAs and 505(b)(2) Applications Under Hatch-Waxman, as Amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003

## Questions and Answers

### *DRAFT GUIDANCE*

**This guidance document is being distributed for comment purposes only.**

Comments and suggestions regarding this draft document should be submitted within 90 days of publication in the *Federal Register* of the notice announcing the availability of the draft guidance. Submit comments to the Division of Dockets Management (HFA-305), Food and Drug Administration, 5630 Fishers Lane, rm. 1061, Rockville, MD 20852. All comments should be identified with the docket number listed in the notice of availability that publishes in the *Federal Register*.

For questions regarding this draft document, contact Martin Shimer, 301-827-5710.

**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Center for Drug Evaluation and Research (CDER)**

**October 2004**
**OGD**

# Guidance for Industry

## Listed Drugs, 30-Month Stays, and Approval of ANDAs and 505(b)(2) Applications Under Hatch-Waxman, as Amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003

## Questions and Answers

*Additional copies are available from:*

*Office of Training and Communications*
*Division of Drug Information, HFD-240*
*Center for Drug Evaluation and Research*
*Food and Drug Administration*
*5600 Fishers Lane*
*Rockville, MD 20857*
*(Tel) 301-827-4573*
*http://www.fda.gov/cder/guidance/index.htm*

**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Center for Drug Evaluation and Research (CDER)**

**October 2004**
**OGD**

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

# TABLE OF CONTENTS

I.      INTRODUCTION..........................................................................................................................................1

II.     QUESTIONS AND ANSWERS...............................................................................................................2

A.      Listed Drug...............................................................................................................................................2

B.      Role of Court Decisions and Other Judicial Action..............................................................3

C.      Notice of Paragraph IV Certifications ......................................................................................6

D.      Multiple 30-Month Stays.................................................................................................................8

E.      180-Day Exclusivity.......................................................................................................................... 10

F.      Applicability and Effective Dates ............................................................................................ 11

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

# Guidance for Industry[1]
## Listed Drugs, 30-Month Stays, and Approval of ANDAs and 505(b)(2) Applications Under Hatch-Waxman, as Amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003

## Questions and Answers

This draft guidance, when finalized, will represent the Food and Drug Administration's (FDA's) current thinking on this topic. It does not create or confer any rights for or on any person and does not operate to bind FDA or the public. You can use an alternative approach if the approach satisfies the requirements of the applicable statutes and regulations. If you want to discuss an alternative approach, contact the FDA staff responsible for implementing this guidance. If you cannot identify the appropriate FDA staff, call the appropriate number listed on the title page of this guidance.

## I.    INTRODUCTION

On December 8, 2003, President Bush signed into law the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Public Law 108-173) (MMA). Title XI of the MMA amends sections 505(b), (c), and (j) of the Federal Food, Drug, and Cosmetic Act (the Act) (21 U.S.C. 355(b), (c), and (j)). Among other things, the MMA directs FDA to issue guidance defining the term *listed drug* with respect to amendments and supplements to abbreviated new drug applications (ANDAs). This guidance is intended to clarify when a change to an ANDA should reference a listed drug *different* from the drug referenced in the original ANDA, thus requiring the change to be made through an entirely new application. As directed by the MMA, this document (in the form of questions and answers) provides guidance on the definition of *listed drug*.

Further, as indicated in our March 3, 2004, *Federal Register* notice,[2] we have been considering what other steps we should take in light of the MMA. As one such step, this document provides guidance to industry on certain sections of the MMA that significantly change provisions of the Act that were originally added by the Drug Price Competition and Patent Term Restoration Act of 1984 (Public Law 98-417) (Hatch-Waxman). These changes relate, in substantial part, to 30-month stays and to the timing of approval of ANDAs and new drug applications (NDAs) described in section 505(b)(2) of the Act (505(b)(2) applications). Specifically, this guidance clarifies changes made by the MMA with respect to (1) the availability and termination of 30-month stays of

---

[1] This guidance has been prepared by the Office of Generic Drugs (OGD) in the Center for Drug Evaluation and Research (CDER) in cooperation with the Office of Regulatory Policy (ORP) and the Office of the Chief Counsel (OCC) at the Food and Drug Administration.

[2] See *Generic Drug Issues; Request for Comments* (69 FR 9982).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

40  approval on ANDAs and 505(b)(2) applications under section 505(j)(5)(B)(iii) and
41  505(c)(3)(C) of the Act, respectively, and (2) requirements for notice of patent
42  certifications described in sections 505(b)(2)(A)(iv) and 505(j)(2)(A)(vii)(IV) of the Act
43  (paragraph IV certifications). It also clarifies the applicability of certain changes made
44  by the MMA regarding the period during which ANDAs that were not the first to
45  challenge a patent on the listed drug cannot be approved (180-day exclusivity), as
46  described in section 505(j)(5)(B)(iv) of the Act. Finally, this guidance explains the
47  various effective dates that apply to the MMA's provisions.
48
49  FDA's guidance documents, including this guidance, do not establish legally enforceable
50  responsibilities. Instead, guidances describe the Agency's current thinking on a topic and
51  should be viewed only as recommendations, unless specific regulatory or statutory
52  requirements are cited. The use of the word *should* in Agency guidances means that
53  something is suggested or recommended, but not required.
54
55  **II.    QUESTIONS AND ANSWERS**
56
57      **A.    Listed Drug**
58
59  **1.    Why is a guidance needed on the definition of *listed drug*?**
60
61  The MMA, among other things, generally prohibits an ANDA applicant from amending
62  or supplementing its application to refer to a listed drug which is different from that
63  referred to in the application when originally submitted. Such a change can be made only
64  by the submission of an entirely new application.
65
66  Title XI of the MMA states in part that the Secretary will issue guidance defining the
67  term *listed drug* for purposes of section 1101(a)(1)(B) of the MMA. That section, which
68  is now section 505(j)(2)(D)(i) of the Act, provides that "[a]n applicant may not amend or
69  supplement an [ANDA] to seek approval of a drug referring to a different listed drug
70  from the listed drug identified in the application as submitted to the Secretary."[3] FDA's
71  definition of *listed drug* is contained in § 314.3 (21 CFR 314.3).[4] The Agency does not
72  intend to amend that definition.

---

[3] The MMA added a related provision to the Act with respect to 505(b)(2) applications: "An applicant may
not amend or supplement [a 505(b)(2) application] to seek approval of a drug that is a different drug than
the drug identified in the application as submitted to the Secretary" (section 505(b)(4)(A) of the Act). This
guidance does not pertain to the foregoing provision on 505(b)(2) applications because that provision does
not use the term *listed drug*, and the MMA only directs FDA to issue guidance with respect to the provision
applicable to 505(j) applications.

[4] This definition reads:

    *Listed drug* means a new drug product that has an effective approval under section 505(c) of the [A]ct for
    safety and effectiveness or under section 505(j) of the [A]ct, which has not been withdrawn or suspended under
    section 505(e)(1) through (e)(5) or (j)(5) of the [A]ct, and which has not been withdrawn from sale for what
    FDA has determined are reasons of safety or effectiveness. Listed drug status is evidenced by the drug
    product's identification as a drug with an effective approval in the current edition of FDA's "Approved Drug
    Products with Therapeutic Equivalence Evaluations" [commonly referred to as the Orange Book] or any current
    supplement thereto…. A drug product is deemed to be a listed drug on the date of effective approval of the
    application or abbreviated application for that drug product (21 CFR 314.3(b)).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

73
74   **2.    Generally, when should a separate ANDA be submitted for a different listed**
75          **drug?**
76
77   The appropriate choice of whether to submit a new ANDA for a proposed product — as
78   opposed to submitting an amendment or supplement to a previously submitted or already
79   approved ANDA — is governed by a number of considerations.   All changes that would
80   have the effect of seeking approval for a drug product different from the listed drug cited
81   in the initial submission (e.g., different active ingredient, dosage form, route of
82   administration) should be made in a new application.   When the Orange Book identifies
83   as a separate listed drug a product with the characteristics (e.g., active ingredient, dosage
84   form, route of administration) for which the applicant is seeking approval, the applicant
85   should submit a separate ANDA referencing the corresponding listed drug.[5]   The
86   applicant should not submit a supplement or amendment to its pending or approved
87   application to seek approval for such a change.
88
89   **3.    Can an amendment or supplement be submitted for different strengths?**
90
91   Each strength of an approved drug is a separate listed drug.   Each strength proposed in an
92   ANDA should reference the corresponding listed drug (although the reference standard
93   for purposes of bioequivalence may be only one strength).   Generally, a single
94   application can be used to seek approval for different strengths of the same listed drug.
95   Also, an applicant may submit an amendment or supplement to seek approval of a
96   different strength from that for which the application was initially submitted and is not
97   required to file a separate application for such a change.   This is expressly permitted
98   under the Act, as amended by the MMA (see section 505(j)(2)(D)(ii) of the Act, as
99   amended).
100
101         **B.    Role of Court Decisions and Other Judicial Action**
102
103   **1.    What court decisions and other judicial actions are relevant for lifting 30-**
104          **month stays of approval on ANDAs and 505(b)(2) applications?**
105
106   Hatch-Waxman amended the Act to establish up to a 30-month stay of approval on an
107   ANDA or 505(b)(2) application if:
108
109         •      The application includes a paragraph IV certification challenging a patent
110                listed in the Orange Book (a listed patent) that claims the approved drug
111                (listed drug) on which the ANDA or 505(b)(2) application relies or claims
112                the use of the listed drug, and
113

---

[5] Separate approved drug products, other than products with different strengths, will ordinarily have
different NDA numbers.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

114    •     The patent owner or NDA holder for the listed drug sues the ANDA or
115         505(b)(2) applicant for patent infringement within 45 days of receiving
116         notice of the paragraph IV certification.
117
118    The 30-month stay may be shortened or lengthened by the court if "either party to the
119    action fail[s] to reasonably cooperate in expediting the action."[6]
120
121    The MMA further amends the Act to specify what actions by what courts will terminate a
122    30-month stay of approval. (The MMA also amends the Act to alter the circumstances
123    under which a 30-month stay can arise, as discussed below in questions 1 and 2 in
124    subsection II.D of this document.) The provisions of the MMA that identify the relevant
125    court actions apply to any proceeding under section 505 of the Act that is pending on or
126    after December 8, 2003.[7] Under the MMA, a 30-month stay will be terminated and
127    approval of an ANDA or 505(b)(2) application may be made effective, as of any of the
128    following:
129
130    •     The **date that the district court enters judgment** reflecting its decision
131         that the patent at issue is invalid or not infringed (including any
132         substantive determination that there is no cause of action for patent
133         infringement or invalidity),[8] **or**
134
135    •     The **date of a settlement order or consent decree signed and entered**
136         **by the district court** stating that the patent that is the subject of the
137         certification is invalid or not infringed,[9] **or**
138
139    •     If the district court decides that the patent has been infringed, and this
140         decision is reversed on appeal, the **date on which the court of appeals**
141         **decides that the patent is invalid or not infringed** (including any
142         substantive determination that there is no cause of action for patent
143         infringement or invalidity),[10] or the date of a settlement order or
144         **consent decree signed and entered by the court of appeals** stating that

---

[6] Section 505(c)(3)(C) and 505(j)(5)(B)(iii) of the Act.

[7] See MMA Title XI section 1101(c)(1).

[8] See MMA Title XI section 1101(a)(2)(A)(ii)(II)(aa) and 1101(b)(2)(B)(ii)(II) (creating new section 505(j)(5)(B)(iii)(I)(aa) and 505(c)(3)(C)(i)(I) of the Act, respectively); see also MMA Title XI section 1101(a)(2)(A)(ii)(II)(cc) and 1101(b)(2)(B)(ii)(IV) (amending section 505(j)(5)(B)(iii)(III) and 505(c)(3)(C)(iii) of the Act, respectively).

[9] See MMA Title XI section 1101(a)(2)(A)(ii)(II)(bb) and 1101(b)(2)(B)(ii)(II) (creating new section 505(j)(5)(B)(iii)(I)(bb) and 505(c)(3)(C)(i)(II) of the Act, respectively); see also MMA Title XI section 1101(a)(2)(A)(ii)(II)(cc) and 1101(b)(2)(B)(ii)(IV) (amending section 505(j)(5)(B)(iii)(III) and 505(c)(3)(C)(iii) of the Act, respectively).

[10] See MMA Title XI section 1101(a)(2)(A)(ii)(II)(bb) and 1101(b)(2)(B)(ii)(III) (creating new section 505(j)(5)(B)(iii)(II)(aa)(AA) and 505(c)(3)(C)(i)(I)(aa) of the Act, respectively); see also MMA Title XI section 1101(a)(2)(A)(ii)(II)(dd) and 1101(b)(2)(B)(ii)(V) (creating new section 505(j)(5)(B)(iii)(IV) and 505(c)(3)(C)(iv) of the Act, respectively).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

145      the patent that is the subject of the certification is invalid or not
146      infringed.[11]
147
148  If the district court hearing a patent infringement suit resulting from a paragraph IV
149  certification decides that the patent at issue is infringed, and this decision is not appealed
150  or is affirmed on appeal, the ANDA or 505(b)(2) application may be approved based on
151  the district court's ruling in accordance with the patent's expiration and any extension or
152  exclusivity that remains.[12]
153
154  **2.     What court decisions are relevant for triggering 180-day exclusivity for**
155        **ANDAs?**
156
157  As established by Hatch-Waxman, if an applicant (or applicants) is the first to submit a
158  substantially complete ANDA containing a paragraph IV certification to a listed patent
159  that claims the listed drug on which the application relies or claims a use of the listed
160  drug (a paragraph IV ANDA), the applicant (or applicants) can be eligible for a 180-day
161  period during which no other ANDA with a paragraph IV certification for the same drug
162  may be approved.[13] This period is commonly referred to as *180-day exclusivity*.[14] Under
163  Hatch-Waxman before the MMA, the 180-day exclusivity period was triggered by the
164  earlier of the first commercial marketing of the drug described in the first applicant's
165  ANDA, or the first court decision holding invalid or not infringed the patent that was the
166  subject of the first applicant's paragraph IV certification.[15]
167
168  The MMA changes the relevance of court decisions for 180-day exclusivity in the
169  following ways:
170
171        •    For paragraph IV ANDAs filed after December 8, 2003, for a listed drug
172            for which no paragraph IV certification was made in any ANDA before
173            that date, **court decisions will no longer trigger the period of 180-day**
174            **exclusivity; and**
175
176        •    For all other ANDAs, **a court decision can still trigger the period of**
177            **180-day exclusivity. However, if the exclusivity was not already**
178            **triggered before December 8, 2003, the triggering court decision must**
179            **be one from which no appeal has been or can be taken,** other than a

---

[11] See MMA Title XI section 1101(a)(2)(A)(ii)(II)(bb) and 1101(b)(2)(B)(ii)(III) (creating new section 505(j)(5)(B)(iii)(II)(aa)(BB) and 505(c)(3)(C)(ii)(I)(bb) of the Act, respectively); see also MMA Title XI section 1101(a)(2)(A)(ii)(II)(dd) and 1101(b)(2)(B)(ii)(V) (creating new section 505(j)(5)(B)(iii)(IV) and 505(c)(3)(C)(iv) of the Act, respectively).

[12] See MMA Title XI section 1101(a)(2)(A)(ii)(II)(bb) and 1102(b)(2)(B)(ii)(III) (creating new section 505(j)(5)(B)(iii)(II)(bb) and 505(c)(3)(C)(ii)(II) of the Act, respectively); see also MMA Title XI section 1101(a)(2)(A)(ii)(II)(dd) and 1101(b)(2)(B)(ii)(V) (creating new section 505(j)(5)(B)(iii)(IV) and 505(c)(3)(C)(iv) of the Act, respectively).

[13] See section 505(j)(5)(B)(iv) of the Act.

[14] 505(b)(2) applications do not qualify for 180-day exclusivity.

[15] See section 505(j)(5)(B)(iv) of the Act; *Mylan Pharmaceuticals, Inc. v. Shalala*, 81 F. Supp. 2d 30 (D.D.C. 2000).

180  petition to the Supreme Court for a writ of certiorari (generally a decision
181  of an appellate court).[16] (This is a transitional provision that redefines the
182  court decision that can begin the 180-day period of exclusivity for any
183  product for which there was a paragraph IV ANDA before enactment of
184  the MMA.)
185
186  3.  **An ANDA was submitted on September 6, 2003, and was the first**
187  **substantially complete ANDA to be submitted with a paragraph IV**
188  **certification to the only listed patent for the listed drug. The ANDA**
189  **applicant was sued for patent infringement. After December 8, 2003, the**
190  **district court issues a decision finding the patent at issue invalid. This**
191  **decision is appealed. Can the ANDA be approved? Does the applicant's 180-**
192  **day exclusivity start to run on the date of the district court's decision?**
193
194  As explained in the response to question 1 in subsection II.B of this document, for any
195  proceeding under section 505 of the Act pending on or after December 8, 2003, the
196  district court's decision that the patent at issue is invalid or not infringed terminates the
197  30-month stay of approval. Thus, if it is otherwise ready for approval, the ANDA in this
198  question can be approved at the time of the district court's decision. However, as
199  explained in response to question 2 in subsection II.B, as a result of the MMA, 180-day
200  exclusivity for ANDAs filed before December 8, 2003, can now be triggered by a court
201  decision only if it is a decision that has not been, or cannot be, appealed. Therefore, the
202  district court's decision does not trigger 180-day exclusivity in the scenario described in
203  this question because that decision has been appealed. Note that this result is a departure
204  from prior law. Before enactment of the MMA, a district court decision finding a listed
205  patent invalid or not infringed would have both terminated a 30-month stay and, in the
206  case of an ANDA that qualified for 180-day exclusivity, triggered the start of such
207  exclusivity as to that patent (if the exclusivity was not already triggered by commercial
208  marketing).
209
210  4.  **What is the status of FDA's guidance for industry entitled *Court Decisions,***
211  ***ANDA Approvals, and 180-Day Exclusivity Under the Hatch-Waxman***
212  ***Amendments to the Federal Food, Drug, and Cosmetic Act*?**
213
214  That guidance addresses the types of court decisions relevant for ANDA approvals and
215  180-day exclusivity under Hatch-Waxman before enactment of the MMA. The MMA
216  supersedes relevant provisions of Hatch-Waxman in effect at the time that guidance was
217  published and thus supersedes the guidance.
218
219  **C.  Notice of Paragraph IV Certifications**
220
221  1.  **Are ANDA and 505(b)(2) applicants required to give notice for paragraph IV**
222  **certifications made between August 18, 2003, and December 8, 2003?**

---

[16] See MMA Title XI section 1102(b)(3) (defining, for this purpose, *decision of a court* as used in section 505(j)(5)(B)(iv) of the Act).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

223
224  Yes. The MMA requires ANDA and 505(b)(2) applicants to provide notice for *all*
225  paragraph IV certifications submitted to FDA on or after August 18, 2003.[17] Notice is to
226  be provided:
227

228  • If the certification is included in the original application, not later than 20
229    days after the date of the postmark on the notice from FDA informing the
230    applicant that the application has been filed, or
231

232  • If the certification is in an amendment or supplement, at the time the
233    applicant submits the amendment or supplement, regardless of whether the
234    applicant has already given notice of a prior paragraph IV certification
235    contained in the application or an amendment or supplement to the
236    application.[18]
237

238  We recognize that our final rule which became effective on August 18, 2003 (Final
239  Rule),[19] stated that notice was not required for a paragraph IV certification made by an
240  ANDA or 505(b)(2) applicant if the applicant had already provided notice of another
241  paragraph IV certification in its application or an amendment or supplement to the
242  application. However, as discussed above, the MMA's provisions regarding notice are
243  retroactive to August 18, 2003, and supersede the Final Rule's provisions concerning this
244  subject. On March 10, 2004, FDA revoked the Final Rule's notice-related provisions.[20]
245

246  We are also aware that compliance with the MMA's time frame for providing notice of a
247  paragraph IV certification made in an amendment to an ANDA or 505(b)(2) application
248  is not possible for ANDA and 505(b)(2) applicants who submitted paragraph IV
249  certifications in amendments between August 18, 2003, and December 8, 2003, for which
250  no notice was required under the Final Rule, and who have not yet provided notice of
251  these certifications. We emphasize, however, that the MMA's requirement for notice is
252  now in effect for all paragraph IV certifications made on or after August 18, 2003,[21]
253  including those paragraph IV certifications previously excluded from notice requirements
254  by the recently revoked provisions of the Final Rule. Accordingly, all applicants with
255  pending ANDAs or 505(b)(2) applications that include paragraph IV certifications made
256  on or after August 18, 2003, but before December 8, 2003, should have provided notice
257  to NDA holders and patent owners in a timely manner.

---

[17] See MMA Title XI section 1101(a)(1)(A) and 1101(b)(1)(A) (amending section 505(j)(2)(B)(i) and
505(b)(3)(A) of the Act, respectively); see also MMA Title XI section 1101(c)(2).
[18] See MMA Title XI section 1101(a)(1)(A) and 1101(b)(1)(A) (amending section 505(j)(2)(B)(ii) and
505(b)(3)(B) of the Act, respectively).
[19] See *Applications for FDA Approval to Market a New Drug: Patent Submission and Listing
Requirements and Application of 30-Month Stays on Approval of Abbreviated New Drug Applications
Certifying That a Patent Claiming a Drug Is Invalid or Will Not Be Infringed*; Final Rule (68 FR 36676;
June 18, 2003).
[20] See *Application of 30-Month Stays on Approval of Abbreviated New Drug Applications and Certain
New Drug Applications Containing a Certification That a Patent Claiming the Drug Is Invalid or Will Not
Be Infringed*; Technical Amendment (69 FR 11309; March 10, 2004).
[21] See MMA Title XI section 1101(c)(2).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

258
259  **2.    If, between August 18, 2003, and December 8, 2003, an ANDA or 505(b)(2)**
260  **applicant provided voluntary notice with respect to a paragraph IV**
261  **certification for which notice was not required under the Final Rule, is the**
262  **applicant considered to have satisfied the MMA's notice requirement?**
263
264  The applicant will have satisfied the MMA's notice requirement if the notice it gave
265  complies with all applicable provisions of the MMA (e.g., provisions specifying to whom
266  notice must be given and the notice's required contents). [22]
267
268  **D.    Multiple 30-Month Stays**
269
270  **1.    Does the MMA preclude ANDAs and 505(b)(2) applications from being**
271  **subject to more than one 30-month stay of approval?**
272
273  The MMA generally precludes multiple 30-month stays for those applications to which it
274  applies. The relevant provisions of the MMA apply to patents submitted to FDA on or
275  after August 18, 2003. [23]  For ANDAs and 505(b)(2) applications with paragraph IV
276  certifications to a patent submitted to FDA on or after August 18, 2003, the MMA
277  provides that a 30-month stay may be available for litigation related to that patent only if
278  the patent was submitted to FDA before the date that the ANDA or 505(b)(2) application
279  (excluding an amendment or supplement) was submitted. [24]  In other words, the MMA
280  precludes 30-month stays for *later listed* patents, that is, those patents submitted to FDA
281  on or after the date the ANDA or 505(b)(2) application was submitted. Because of this
282  limitation, in most cases, ANDAs and 505(b)(2) applications will be subject to no more
283  than one 30-month stay. [25]
284
285  Multiple 30-month stays, however, still may be possible in certain cases. For instance, an
286  ANDA or 505(b)(2) application may contain a paragraph IV certification to a patent at
287  the time of first submission that gives rise to one 30-month stay. If the same application
288  also contains a paragraph III certification to a different patent that was submitted to FDA
289  (1) on or after August 18, 2003, and (2) before the ANDA or 505(b)(2) application was
290  submitted, and the applicant subsequently converts this certification to a paragraph IV

---

[22]  See MMA Title XI section 1101(a)(1)(A) and 1101(b)(1)(A) (amending section 505(j)(2)(B) and
505(b)(3) of the Act, respectively).
[23]  See MMA Title XI section 1101(c)(3). The effective date for this provision means that the MMA
supersedes FDA's Final Rule with respect to the availability of 30-month stays. As noted earlier in
response to question 1 in subsection II.C of this document, on March 10, 2004, FDA revoked provisions of
the Final Rule superseded by the MMA (see footnote 20, supra).
[24]  See MMA Title XI 1101(a)(2)(A)(ii)(I) and 1101(b)(2)(B)(i) (amending section 505(j)(5)(B)(iii)
and 505(c)(3)(C) of the Act, respectively).
[25]  Under the regulations in effect before FDA adopted its August 18, 2003, Final Rule, multiple 30-month
stays could arise in the case of later-listed patents if (1) an ANDA or 505(b)(2) application had already
been subject to one such stay based on a paragraph IV certification to a patent listed before the
application's submission, and (2) the ANDA or 505(b)(2) applicant made a subsequent paragraph IV
certification to a patent listed after the application's submission that triggered another timely patent
infringement lawsuit.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

291 certification, a second 30-month stay could be possible. This is because the new
292 paragraph IV certification is subject to the MMA and references a patent submitted to
293 FDA before the applicant's ANDA was submitted.
294

295 **2.   Does the MMA ensure that a patent owner or NDA holder can obtain one 30-**
296 **month stay of approval on an ANDA or 505(b)(2) application containing a**
297 **paragraph IV certification to a listed patent when the patent owner or NDA**
298 **holder sues the ANDA or 505(b)(2) applicant for patent infringement?**
299

300 No. The MMA does not guarantee that any patent owner or NDA holder will receive a
301 30-month stay, even if it sues for patent infringement. Rather, the MMA provides the
302 opportunity to obtain a stay only in certain situations. As noted in response to question 1
303 in subsection II.D of this document, the amendments made by the MMA with respect to
304 the availability of 30-month stays apply to patents submitted to FDA on or after August
305 18, 2003. With respect to such patents, a 30-month stay of approval on an ANDA or
306 505(b)(2) application containing a paragraph IV certification to the patent will ensue if:
307

308 •   The patent was submitted before the date that the ANDA or 505(b)(2)
309     application (excluding an amendment or supplement) was submitted to
310     FDA, **and**
311

312 •   The patent owner or NDA holder initiates a patent infringement action on
313     the patent within 45 days of the date that it receives notice of the
314     certification.[26]
315

316 No 30-month stay of approval will result from a patent subject to the MMA, even if
317 litigation is initiated based on a paragraph IV certification to the patent, if either of the
318 conditions described above is not satisfied. That is, no 30-month stay of approval will
319 apply if the patent was submitted to FDA *on or after* the date the ANDA or 505(b)(2)
320 application with a paragraph IV certification to the patent was submitted. (Note that this
321 is the case even if the later-submitted patent is the first listed patent to claim the drug
322 described in the ANDA or 505(b)(2) application.) In addition, a 30-month stay will not
323 ensue if litigation is initiated more than 45 days after the date that the patent owner or
324 NDA holder receives notice of the certification.
325

326 **3.   An ANDA was submitted to FDA in November 2003 with multiple patent**
327 **certifications, including a paragraph IV certification to at least one patent.**
328 **No patent infringement lawsuit was initiated, but a new patent was**
329 **submitted to FDA on December 27, 2003. What are the ANDA applicant's**
330 **certification and notification obligations? Is a 30-month stay of approval**
331 **possible based on the December 27 patent?**
332

---

[26] See MMA Title XI section 1101(a)(2)(A) and 1101(b)(2)(B) (amending section 505(j)(5)(B)(iii) and 505(c)(3)(C) of the Act, respectively); see also MMA Title XI section 1101(c)(3).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

333    Under section 505(j)(2)(A)(vii) of the Act (which was not amended by the MMA), the
334    ANDA applicant would be required to provide a certification with respect to the
335    December 27, 2003, patent. With regard to notice, as discussed in response to question 1
336    in subsection II.C of this document, the MMA amends section 505 of the Act to make
337    clear that ANDA and 505(b)(2) applicants must provide notice of all paragraph IV
338    certifications.[27] Accordingly, if the applicant amends its ANDA to include a paragraph
339    IV certification to the December 27, 2003, patent, it would be required by the MMA to
340    notify the patent owner and NDA holder of its certification at the time its amendment is
341    submitted.[28]
342
343    As previously discussed, the MMA provides that a 30-month stay cannot arise from a
344    patent submitted on or after August 18, 2003, unless the patent was also submitted to
345    FDA before the ANDA or 505(b)(2) application was submitted.[29] Accordingly, no 30-
346    month stay of approval would be possible based on the December 27, 2003, patent in this
347    question.
348
349    **4.    Is a 30-month stay based on a patent possible if the patent (1) is submitted to**
350    **FDA on or after August 18, 2003, and before an ANDA or 505(b)(2)**
351    **application with a paragraph IV certification to the patent is submitted, and**
352    **(2) is not published in the Orange Book before the application's submission?**
353
354    The patent described in this question could provide the basis for a 30-month stay if the
355    other conditions for a stay, as discussed above, are satisfied. As previously noted, under
356    the MMA, a patent that is submitted to FDA on or after August 18, 2003, could
357    potentially trigger a 30-month stay if it is also "submitted . . . before the date on which
358    the [ANDA] application (excluding an amendment or supplement to the application) is
359    submitted."[30] Eligibility for a 30-month stay thus turns on when the patent is *submitted*
360    to FDA, as opposed to when it is published in the Orange Book. Because the patent in
361    this question meets the time frames for submission specified in the MMA, it can result in
362    a 30-month stay, regardless of when it is published in the Orange Book.
363
364    **E.    180-Day Exclusivity**
365
366    **What ANDAs are subject to the MMA's new 180-day exclusivity provisions?**
367
368    With two exceptions, the new provisions relating to 180-day exclusivity govern only
369    ANDAs filed after the date of the MMA's enactment (December 8, 2003) that reference a
370    listed drug for which no paragraph IV certification was made in any ANDA before that
371    date.[31] The two exceptions concern the forfeiture of 180-day exclusivity by entering into

---

[27] See MMA Title XI section 1101(a)(1)(A) and 1101(b)(1)(A) (amending section 505(j)(2)(B)(i) and
505(b)(3)(A) of the Act, respectively); see also MMA Title XI section 1101(c)(2).
[28] See MMA Title XI section 1101(a)(1) (creating new section 505(j)(2)(B)(ii)(II) of the Act).
[29] See MMA Title XI section 1101(a)(2)(A)(ii)(I) (amending section 505(j)(5)(B)(iii) of the Act).
[30] MMA Title XI section 1101(a)(2)(A)(ii)(I) (amending section 505(j)(5)(B)(iii) of the Act).
[31] See MMA Title XI section 1102(b)(1).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

372    a collusive agreement and the triggering of the exclusivity period by judicial action.[32] All
373    other ANDAs remain subject to the 180-day exclusivity provisions in effect before the
374    MMA's enactment. Thus, for example, FDA's guidance for industry, *180-Day*
375    *Exclusivity When Multiple ANDAs Are Submitted on the Same Day,* still applies to
376    ANDAs submitted before, on, or after December 8, 2003, that reference a listed drug for
377    which a paragraph IV certification had been made in any ANDA before December 8,
378    2003. FDA will further interpret provisions of the MMA relating to 180-day exclusivity
379    in future regulations and/or guidances.
380
381    **F.    Applicability and Effective Dates**
382
383    **What are the effective dates of the various provisions of the MMA?**
384

| MMA Section | Amended or Added Sections of the Act | Effective Date or Scope of Applicability |
|---|---|---|
| 1101(a)(1) and (b)(1)<br><br>(Amending or supplementing an application) | 505(j)(2)(D) and 505(b)(4) | A change in listed drug or proposed drug made on or after December 8, 2003 |
| 1101(a)(1) and (b)(1)<br><br>(Notice provisions) | 505(j)(2)(B) and 505(b)(3) | Any paragraph IV certification submitted on or after August 18, 2003 in an application, amendment, or supplement |
| 1101(a)(2)(A)(ii)(I) and (b)(2)(B)(i)<br><br>(30-month stay provisions) | 505(j)(5)(B)(iii) and 505(c)(3)(C) | Retroactive to patent information submitted to FDA on or after August 18, 2003 |
| 1101(a)(2)(A)(ii)(II) and (b)(2)(B)(ii)<br><br>(Court decision provisions for approval) | 505(j)(5)(B)(iii) and 505(c)(3)(C) | Any proceeding pending on or after December 8, 2003, regardless of the date on which the proceeding was or is commenced |

---

[32] The exception relating to forfeiture based on a first ANDA applicant's entry into an anti-competitive agreement applies if conditions specified in the MMA are met, regardless of when the first ANDA paragraph IV certification for the listed drug was made (see MMA Title XI section 1102(b)(2)). The second exception relates to the MMA's definition of the term *decision of a court* for purposes of section 505(j)(5)(B)(iv) of the Act. As discussed in response to question 2 in subsection II.B of this document, the MMA's definition of this term applies to alter the court decision trigger for 180-day exclusivity for all ANDAs other than those filed after December 8, 2003, for a listed drug for which no paragraph IV certification was made in any ANDA before that date (see MMA Title XI section 1102(b)(3)).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

| MMA Section | Amended or Added Sections of the Act | Effective Date or Scope of Applicability |
|---|---|---|
| 1101(a)(2)(C) and (b)(2)(D)<br><br>(Civil action to obtain patent certainty) | 505(j)(5)(C) and 505(c)(3)(D) | Any proceeding pending on or after December 8, 2003, regardless of the date on which the proceeding was or is commenced |
| 1102(a)<br><br>(180-day exclusivity period) | 505(j)(5)(B)(iv) and 505(j)(5)(D) | ANDAs filed after December 8, 2003 for a listed drug for which no paragraph IV certification had been made in any ANDA before December 8, 2003, except as provided in the box immediately following |
| 1102(a)(2)<br><br>(Collusive agreement forfeiture provision) | New 505(j)(5)(D)(i)(V) | ANDAs filed after December 8, 2003, regardless of when the first paragraph IV certification was made for the listed drug referenced in any ANDA |
| 1102(b)(3)<br><br>(Meaning of *decision of a court* that will trigger the beginning of 180-day exclusivity for certain ANDAs) | 505(j)(5)(B)(iv) | ANDAs for a listed drug for which a paragraph IV certification was made in any ANDA before December 8, 2003, and for which there was no court decision or commercial marketing that triggered 180-day exclusivity (under the Act pre-MMA) on or before December 8, 2003 |
| 1103(a)<br><br>(Bioavailability/ bioequivalence) | 505(j)(8) | December 8, 2003 |

# Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit B

**Search results from the "OB_Rx" table for query on "018723."**

---

| | |
|---|---|
| Active Ingredient: | DIVALPROEX SODIUM |
| Dosage Form;Route: | TABLET, DELAYED RELEASE; ORAL |
| Proprietary Name: | DEPAKOTE |
| Applicant: | ABBOTT |
| Strength: | EQ 250MG VALPROIC ACID |
| Application Number: | 018723 |
| Product Number: | 001 |
| Approval Date: | Mar 10, 1983 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |
| Patent and Exclusivity Info for this product: | View |

---

| | |
|---|---|
| Active Ingredient: | DIVALPROEX SODIUM |
| Dosage Form;Route: | TABLET, DELAYED RELEASE; ORAL |
| Proprietary Name: | DEPAKOTE |
| Applicant: | ABBOTT |
| Strength: | EQ 500MG VALPROIC ACID |
| Application Number: | 018723 |
| Product Number: | 002 |
| Approval Date: | Mar 10, 1983 |
| Reference Listed Drug | Yes |
| RX/OTC/DISCN: | RX |
| TE Code: | |
| Patent and Exclusivity Info for this product: | View |

---

| | |
|---|---|
| Active Ingredient: | DIVALPROEX SODIUM |
| Dosage Form;Route: | TABLET, DELAYED RELEASE; ORAL |
| Proprietary Name: | DEPAKOTE |
| Applicant: | ABBOTT |
| Strength: | EQ 125MG VALPROIC ACID |
| Application Number: | 018723 |
| Product Number: | 003 |
| Approval Date: | Oct 26, 1984 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |
| Patent and Exclusivity Info for this product: | View |

---

Return to Electronic Orange Book Home Page

---

FDA/Center for Drug Evaluation and Research
Office of Generic Drugs

Division of Labeling and Program Support
Update Frequency:

Orange Book Data - **Monthly**

Generic Drug Product Information & Patent Information - **Daily**

Orange Book Data Updated Through December, 2007

Patent and Generic Drug Product Data Last Updated: January 11, 2008

Patent and Exclusivity Search Results from query on Appl No 018723 Product 002 in the OB_Rx list.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Drug Substance Claim | Drug Product Claim | Patent Use Code |
|---------|---------|-----------|-------------------|----------------------|--------------------|-----------------|
| 018723 | 002 | 4988731 | JAN 29,2008 | | | |
| 018723 | 002 | 4988731*PED | JUL 29,2008 | | | |
| 018723 | 002 | 5212326 | JAN 29,2008 | | | |
| 018723 | 002 | 5212326*PED | JUL 29,2008 | | | |

## Exclusivity Data

### There is no unexpired exclusivity for this product.

Additional information:

1. Patents are published upon receipt by the Orange Book Staff and may not reflect the official receipt date as described in 21 CFR 314.53(d)(5).
2. Patents submitted on FDA Form 3542 and listed after August 18, 2003 will have one to three patent codes indicating specific patent claims as submitted by the sponsor and are detailed in the above table.
3. Patents listed prior to August 18, 2003 are flagged with method of use claims only as applicable and submitted by the sponsor. These patents may not be flagged with respect to other claims which may apply
4. *PED and PED represent pediatric exclusivity. Patents with pediatric exclusivity granted after August 18, 2003 will be indicated with *PED as was done prior to August 18, 2003. Patents with *PED added after August 18, 2003 will not contain any information relative to the patent itself other than the *PED extension. Information related specifically to the patent will be conveyed on the original patent only.
5. U.S. Patent Nos. RE 36481 and RE 36520 were relisted for Zocor (NDA 19-766) pursuant to the decision and related order in Ranbaxy Labs. v.Leavitt, No. 05-1838 (D.D.C. April 30, 2006). The '481 and '520 patents remained listed in Approved Drug Products with Therapeutic Equivalence Evaluations until any applicable periods of exclusivity pursuant to section 505(j)(5)(B)(iv) of the Federal Food, Drug, and Cosmetic Act were triggered and run. For additional information on this matter, please refer to Docket Nos. 2005P-0008 and 2005P-0046. Patents were subsequently delisted in the December 2006 Orange Book update as the exclusivity periods have triggered and run to expiration.
6. Patent number 4904769 listed on all products of NDA 20482 Precose (Acarbose) was requested to be delisted by the sponsor on 4/16/2007. This patent has remained listed because, under Section 505(j)(5)(D)(i) of the Act, a first applicant may retain eligibility for 180-day exclusivity based on a paragraph IV certification to this patent for a certain period.

View a list of all patent use codes
View a list of all exclusivity codes

Return to Electronic Orange Book Home Page

FDA/Center for Drug Evaluation and Research
Office of Generic Drugs

Division of Labeling and Program Support
Update Frequency:

    Orange Book Data - **Monthly**

    Generic Drug Product Information & Patent Information - **Daily**

    Orange Book Data Updated Through December, 2007

    Patent and Generic Drug Product Data Last Updated: January 11, 2008

Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

**Exhibit C**

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD  20857

April 18, 2007

Dear ANDA Applicant/Holder for Amlodipine Besylate Tablets:

This letter addresses issues related to the timing of potential approvals of abbreviated new drug applications (ANDAs) that reference Norvasc tablets.  This letter construes the provisions of the Drug Price Competition and Patent Term Restoration Act of 1984 (known as the Hatch-Waxman Amendments or Hatch-Waxman), codified at 21 U.S.C. §§ 355, 360cc, and 35 U.S.C. §§ 156, 271, 282, and does not necessarily apply to changes made in the Medicare Modernization Act (MMA) of 2003.[1]

As you are aware, Pfizer Inc. (Pfizer) manufactures and markets Norvasc, a besylate salt of amlodipine, indicated for the treatment of hypertension and angina.  Pfizer had listed two patents with FDA, asserting that they claim Norvasc and would be infringed by the marketing of generic versions of the product.  The later of these patents, Patent No. 4,879,303 ('303 patent), expired on March 25, 2007, so that these patents, by themselves, no longer bar the marketing of generic versions of Pfizer's product.  Several companies have submitted ANDAs for approval to market generic versions of Norvasc.  Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc. (Mylan) filed the first ANDA to market a generic version of Norvasc and had challenged Pfizer's patents by submitting the first  "paragraph IV certifications" to those patents with its application.  FDA approved Mylan's ANDA in October 2005, and Mylan began marketing its product on March 23, 2007.  On or about the same day, Pfizer began marketing a generic version of Norvasc.

Pfizer and Mylan now contend that the approvals of the other ANDAs for amlodipine besylate are blocked by Pfizer's "pediatric exclusivity" until September 25, 2007.  Mylan contends, alternatively, that the approvals of its competitors' ANDAs are blocked by Mylan's "180-day marketing exclusivity" until September 19, 2007.[2]  Resolution of whether pending ANDAs referencing Norvasc are blocked either by Pfizer's pediatric exclusivity or Mylan's 180-day exclusivity involves a number of legal issues, some of first impression for the agency.  Part of the analysis requires FDA to determine the effect of a recent Federal Circuit decision in patent litigation between Pfizer and Apotex Inc. (Apotex), another ANDA applicant for amlodipine besylate who filed a paragraph IV certification after Mylan had submitted its certification.  On March 22, 2007, the Federal Circuit ruled that the three claims in the '303 patent that Pfizer asserted that Apotex infringed were invalid as obvious.  *Pfizer Inc. v. Apotex, Inc.*, No. 2006-1261, 2007 U.S. App. LEXIS 6623 (March 22, 2007) (the *Apotex* decision).

---

[1]  The 1984 Hatch-Waxman provisions govern most issues related to ANDA approval for amlodipine besylate tablets.  Although certain provisions of Hatch-Waxman have been superseded by changes made in the MMA, the 180-day exclusivity provisions of the MMA apply only to applications for which the first ANDA with a paragraph IV certification was filed after December 3, 2003.  Mylan's ANDA was filed before December 3, 2003, and hence is governed by the pre-MMA provisions with respect to 180-day exclusivity.

[2]  Mylan has claimed in its submissions to FDA that its 180-day exclusivity commenced on March 23, 2007 and would expire on September 23, 2007.  See Petition for Stay of Action, Docket 2006P-0116 (March 26, 2007) (http://www.fda.gov/ohrms/dockets/dockets/07p0116/07p-0116-psa0001-01-vol1.pdf). However, 180 days after March 23 is September 19.

*2007N-0123*                                                          *LET 2*

The questions presented by the pending applications and exclusivity claims include: (1) whether the *Apotex* decision is effective upon issuance of the opinion or upon issuance of the mandate, for purposes of determining the application of Pfizer's pediatric exclusivity; (2) upon the *Apotex* decision becoming effective, whether Pfizer's pediatric exclusivity bars approval of the Apotex ANDA; (3) upon the *Apotex* decision becoming effective, whether Pfizer's pediatric exclusivity bars approvals of the remaining ANDAs; and (4) whether Mylan's eligibility for 180-day exclusivity blocks approval of ANDAs after the expiration of Pfizer's patent. These questions are addressed in turn in the Discussion section below.

Regulatory Background

A. Patent Listing and Certification

The Hatch-Waxman Amendments permit the submission of ANDAs for approval of generic versions of approved drug products. 21 U.S.C. § 355(j). Under the procedure established in Hatch-Waxman, NDA sponsors are required to list patents that protect their approved drug substances, drug products, or approved methods of use, 21 U.S.C. § 355(b)(1); FDA publishes those patents in FDA's "Approved Drug Products With Therapeutic Equivalence Evaluations" (the Orange Book); and ANDA applicants are required to certify whether their proposed drug products infringe those listed patents. 21 U.S.C. § 355(j)(2)(A)(vii). As to each patent listed in the Orange Book for the listed drug referenced, an ANDA applicant can certify that 1) such patent information has not been filed (paragraph I certification); 2) the patent has expired (paragraph II certification); 3) the date the patent will expire (paragraph III certification); or 4) the patent is invalid or not infringed by the drug product proposed in the ANDA (paragraph IV certification). *Id.*

In the case of paragraph I and paragraph II certifications, the patent does not serve as a barrier to ANDA approval. A paragraph I or paragraph II certification permits immediate effective approval of the ANDA. 21 U.S.C. § 355(j)(5)(B)(i). If an applicant files a paragraph III certification, approval may be made effective when the patent expires. 21 U.S.C. § 355(j)(5)(B)(ii).

If an applicant seeks to challenge a listed patent and to obtain approval before the patent expires, it must provide a paragraph IV certification certifying that "in the opinion of the applicant and to the best of his knowledge" the patent is "invalid or will not be infringed by the manufacture, use or sale of the [drug described in the ANDA]." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). The applicant with a paragraph IV certification must notify the patent owner and NDA holder of its paragraph IV certification and of the basis of its belief that the patent is invalid or not infringed. 21 U.S.C. § 355(j)(2)(B). The filing of a paragraph IV certification "for a drug claimed in a patent or the use of which is claimed in a patent" is an act of infringement. 35 U.S.C. § 271(e)(2)(A). This enables the NDA holder and patent owner to sue the ANDA applicant. If the patent owner or NDA holder brings a patent infringement suit against the ANDA applicant within 45 days after receiving notice of the paragraph IV certification, the suit triggers an automatic stay of FDA approval for 30 months from the date the patent owner or NDA holder received notice of the certification ("30-month stay"). 21 U.S.C. § 355(j)(5)(B)(iii). If the patent owner or NDA holder does not bring suit within 45 days after it has received notice of the paragraph IV certification, the unexpired patent will not, by itself, bar FDA's approval of the ANDA, even if patent litigation is subsequently commenced outside the 45-day period and is ongoing at the time the requirements for approval are met. See *id.*

B. 180-Day Exclusivity

To provide an incentive for ANDA applicants to be the first to challenge a listed patent and remove patent barriers to approval, Congress provided that:

> [I]f the [ANDA] contains a [paragraph IV certification] and is for a drug for which a previous application has been submitted under this subsection . . . [containing] such a certification, the application shall be made effective not earlier than one hundred eighty days after

> (I)    the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
> (II)   the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed, whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv)(2002).

Although this statutory provision is commonly characterized as granting "180-day exclusivity" to the first applicant to submit an ANDA containing a paragraph IV certification challenging a patent, the statute does not provide for that result directly. Instead, this end is accomplished by delaying the approval of subsequent ANDAs *containing a paragraph IV certification* until 180 days after the exclusivity period for the first ("previous") applicant has been triggered. If the first applicant's ANDA no longer contains a valid paragraph IV certification when it is ready for approval, the first applicant is not eligible for exclusivity. Similarly, when subsequent applicants' ANDAs do not contain paragraph IV certifications, their approval is not delayed under the plain language of this statutory provision.

C. Pediatric Exclusivity

The pediatric exclusivity statute, enacted as part of the Food and Drug Administration Modernization Act (FDAMA) and renewed in the Best Pharmaceuticals for Children Act (BPCA), provides an incentive for NDA sponsors to conduct pediatric studies that FDA has requested. Although this incentive for doing pediatric studies is commonly referred to as "pediatric exclusivity," a grant of pediatric exclusivity alone does not guarantee that an NDA will be free of generic competition while the exclusivity is in effect. Instead, as FDA has opined and the D.C. Circuit has affirmed, the applicability of pediatric exclusivity to prevent approval of a particular applicant's ANDA depends on the outcome of that applicant's patent challenges, if any. See *Mylan Labs., Inc.* v. *Thompson*, 332 F. Supp. 2d 106 (D.D.C. 2004), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd.* v. *FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004). Specifically, the statute states that if the approved product has completed the pediatric exclusivity requirements and is subject to

> (i)    "a listed patent for which a [paragraph II] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the patent expires;"
> (ii)   "a listed patent for which a [paragraph III] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires;"

3

    (iii)      "a listed patent for which a [paragraph IV] certification has been submitted . . . , and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires."

21 U.S.C. § 355a(c)(2)(A)-(B).

<u>Factual Background</u>

On July 31, 1992, FDA approved Pfizer's new drug application (NDA) for amlodipine besylate tablets, which Pfizer began marketing later that year under the brand name Norvasc. Pfizer listed two patents with respect to Norvasc: Patent 4,572,909 ('909 patent), originally due to expire on July 31, 2006, and the '303 patent, originally due to expire on March 25, 2007. Pfizer conducted pediatric studies requested by FDA and, on November 27, 2001, FDA granted Pfizer pediatric exclusivity for Norvasc pursuant to 21 U.S.C. § 355a. Pediatric exclusivity, by delaying approval of ANDAs for six months after the expiration date for a patent, had the potential to block approvals of ANDAs referencing Norvasc until January 31, 2007, with respect to the '909 patent, and until September 25, 2007, with respect to the '303 patent. Because this period with respect to the '909 patent has expired, that patent is no longer relevant to the issues discussed in this letter.

In May 2002, Mylan filed an ANDA for amlodipine besylate, and was the first to file a paragraph IV certification to the '303 patent pursuant to 21 U.S.C. § 355(j)(5)(B)(iv). Pfizer sued Mylan for patent infringement. *Pfizer Inc. v. Mylan Labs. Inc.*, No. 02-cv-1628 (W.D. Pa.). However, because Pfizer did not file its lawsuit within 45 days of receiving notice of Mylan's paragraph IV certification, the filing of the lawsuit did not result in the 30-month stay of approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii). In October 2005, FDA approved Mylan's ANDA.

In February 2007, the district court in the patent litigation between Mylan and Pfizer entered judgment for Pfizer that Mylan had infringed the '303 patent. *Pfizer Inc. v. Mylan Labs., Inc.*, No. 02-cv-1628, 2007 U.S. Dist. LEXIS 14417 (W.D. Pa. Feb. 27, 2007). On March 16, 2007, the district court amended the judgment and enjoined the approval of Mylan's ANDA until the '303 patent expired. *Id.*, 2007 U.S. Dist. LEXIS 18699 (Mar. 16, 2007).[3] Mylan appealed that judgment and sought a stay of the district court's injunction. The Federal Circuit granted the stay. *Pfizer Inc. v. Mylan Labs., Inc.*, No. 2007-1194 (Mar. 23, 2007). Mylan began marketing its product on March 23, 2007.

Apotex, Inc. (formerly Torpharm, Inc.) filed an ANDA for amlodipine besylate, which contained a paragraph IV certification to the '303 patent. On July 20, 2003, Pfizer sued Apotex for patent infringement. In January 2006, the district court held the patent was valid and infringed. *Pfizer, Inc. v. Apotex*, No. 03C 5289, 2006 U.S. Dist. LEXIS 95778 (N.D. Ill. January 29, 2006). The Federal Circuit reversed in the opinion noted above, finding that Apotex's amlodipine besylate

---

[3] When an NDA holder or patent owner sues the ANDA applicant and wins — that is, the court hearing the patent infringement litigation finds the patent valid and infringed -- the Patent Code provides that "the court shall order the effective date of any approval of the drug * * * involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A).

tablets did not infringe claims 1-3 of the '303 patent because those claims were invalid for obviousness. See *Apotex* decision. The Federal Circuit did not address the validity of the remaining claims of the patent, presumably because those were not claims on which Pfizer had sued Apotex. On April 5, 2007, Pfizer filed a motion in the Federal Circuit, seeking a rehearing and/or rehearing en banc of the *Apotex* decision. This motion stayed issuance of the mandate pending its resolution under Rule 41(d)(1) of the Federal Rules of Appellate Procedure (FRAP).

At midnight on March 25, 2007, the '303 patent expired. Pfizer submitted a letter to FDA dated March 25, 2007, contending that approval of Apotex's ANDA was barred by Pfizer's pediatric exclusivity, at least until the Federal Circuit's mandate issues.

On March 26, 2007, Mylan submitted to FDA a Petition for Stay of Action requesting that the FDA refrain from taking any action to approve any ANDA for amlodipine besylate tables until Mylan's 180-day exclusivity expires. According to Mylan, the 180-day exclusivity for amlodipine besylate tablets had been triggered when it commenced marketing on March 23, and is due to expire on September 19, 2007. Also on March 26, Mylan sued FDA in the U.S. District Court for the District of Columbia, alleging that it was entitled to 180-day exclusivity as to the '303 patent and requesting that the court enjoin FDA from approving additional ANDAs for amlodipine until the merits of its claim for 180-day exclusivity could be heard. *Mylan Labs., Inc.* v. *Leavitt*, CA No. 07-579 (RMU)(D.D.C.).

FDA determined that it was unprepared to immediately resolve all of the legal questions raised by the pending applications and exclusivity claims, and would benefit from soliciting the views and legal arguments of the interested parties. FDA informed the court that it proposed to seek comments to be submitted by April 4, 2007, and to issue its determination by April 11, 2007. The court memorialized FDA's proposal, and enjoined FDA from implementing any ANDA approval decisions, once made, until 5:00 PM on April 13, 2007 to allow the court to review FDA's decisions. *Mylan Labs.*, CA No. 07-579 (RMU), Order (March 26, 2007). FDA subsequently moved the court for an extension of time, until April 18, 2007, to issue its determination, which the court granted.

By letter dated March 28, 2007, FDA requested comments on five specific questions from Pfizer and the ANDA applicants for amlodipine besylate tablets. FDA created a docket for collecting the comments and posting them on the internet, and posted its letter requesting comments to give other interested parties an opportunity to comment on the questions FDA raised. (http://www.fda.gov/ohrms/dockets/dockets/07n0123/07n0123.htm) Several parties expressed a range of opinions on the questions FDA posed. *See id.* After receiving and considering submissions from interested parties, FDA reaches the following conclusions.

Discussion

1. For Purposes of Pediatric Exclusivity, the *Apotex* Decision Will Not be Effective until Issuance of the Mandate.

Under the language of the statute, pediatric exclusivity operates by delaying the approval of an ANDA for six months after a patent expires.[4] The operative subsection of the statute varies

---

[4] In this case, Mylan's ANDA is not blocked by Pfizer's pediatric exclusivity because its ANDA was already approved in October 2005, and therefore, under the literal terms of the statute, the ANDA's approval cannot be delayed. 21 U.S.C. § 355a(c)(2)(A)-(B). One commenter maintained that FDA should have converted the approval status of Mylan's ANDA to tentative approval after Mylan lost its patent litigation in the district court. See Comments of Synthon Pharmaceuticals, Inc. at 4. However,

according to the certification submitted by the ANDA applicant. When the ANDA applicant, such as Apotex, submits a paragraph IV certification, "if . . . in the patent litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved . . . shall be extended by a period of six months after the date the patent expires . . . ." *See* 21 U.S.C. § 355a(c)(2)(B).  As discussed in greater detail below, FDA has previously opined, and concludes below, that this provision means that pediatric exclusivity does *not* apply when the ANDA applicant prevails in its patent challenge -- that the court determines that the patent is *in*valid or would *not* be infringed, and that construction has been acknowledged as appropriate by a court. Accordingly, this provision governs the application of pediatric exclusivity, at least with respect to Apotex.

In determining the effect of the *Apotex* decision on Pfizer's pediatric exclusivity claim, the first issue that FDA must resolve is to ascertain the meaning of the phrase "the court determines" for purposes of the statutory provision quoted above. Specifically, FDA must decide whether the Federal Circuit "determined" invalidity when it issued its opinion or will not "determine" validity or infringement until the mandate issues. Because the Court of Appeal's opinion is not effective until the mandate issues, Pfizer argues that the Federal Circuit will not have determined invalidity until that time.  Apotex and others have asserted that the March 22, 2007 date of the issuance of the Federal Circuit opinion is the operative date.

FDA finds that the operative phrase -- "the court determines" -- is ambiguous as to the action it describes. Congress could have been more precise in indicating the action by the court to which it was referring, as it has done in other statutes. Compare, e.g., 26 U.S.C. § 7481(a) (finality is determined "upon mandate" issued by Court of Appeals or Supreme Court) with 21 U.S.C. § 355(j)(5)(B)(iii)(I)(aa)-(bb) (approval "shall be made effective on the date on which the court enters judgment reflecting the decision; or the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed."). Instead, it chose a phrase that, as the comments submitted to FDA reflect, is susceptible to more than one interpretation. On the one hand, the use of the present tense in the word "determines" could suggest that the issuance of the opinion itself is sufficient. Indeed, one dictionary definition of "determine" is "to come to a decision . . . as the result of investigation or reasoning." Webster's Third New International Dictionary (2002) at 616 (definition 1.c). Under this view, a court "determines" validity and infringement when it issues an initial ruling to that effect.

On the other hand, the choice of the word "determines" suggests the fixing or settling of rights and obligations. The dictionary definitions of "determine" include: "to fix conclusively or authoritatively," "to settle a question or controversy about," "to settle or decide by choice of alternatives or possibilities." *Id.* (definitions 1.a, 1.b, and 1.d.). See also Webster's II New Riverside University Dictionary (1994) at 369 ("[t]o end or decide by final, esp. judicial action") (definition 1.b). Under this view, where an appellate court is reversing the district court's judgment below, the parties' rights and obligations continue to be governed by the district court determination until the appellate court issues its mandate effectuating its judgment.

The Federal Rules of Appellate Procedure provide some additional guidance regarding which should be the relevant time frame for determining generally when the Federal Circuit's decision is effective. The rules themselves do not conclusively resolve the issue: FRAP 36 states that a judgment is entered when it is noted on the docket, while FRAP 41(c) states that the mandate is

---

before FDA took such action, the Federal Circuit stayed the district court injunction in that litigation. After that stay, FDA had no basis to convert the approval status of Mylan's ANDA from approved to tentatively approved.

effective when issued. However, the 1998 advisory committee notes to FRAP 41(c) state that "[a] court of appeals judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed." These notes have been cited with approval by courts, *Mercer v. Duke Univ.*, 401 F.3d 199, 212 n.7 (4th Cir. 2005); *Stewart Park & Reserve Coalition Inc. v. Slater*, 374 F. Supp. 2d 243, 248 n.5 (N.D.N.Y. 2005); *United States v. Swan*, 327 F. Supp. 2d 1068, 1071-72 (D. Neb. 2004), and no commenters have cited any authority to FDA that would indicate that the advisory committee notes do not state the current rule regarding finality of appellate court decisions.[5] Therefore, under these rules, until the mandate issues, the parties continued to be bound by the district court judgment.

In FDA's view, the phrase "the court determines" in section 355a(c)(2)(B), in the context of a federal court of appeals reversing a district court judgment, should be read as the date the mandate issues for several reasons. When the district court decides a patent issue, FDA applies that decision, unless it is stayed, in determining issues related to ANDA approval. The district court decision continues to control the rights of the parties until the appellate court mandate issues. Thus, the vital date under this scheme is when the rights of the parties become fixed by the decision of the court of appeals, that is, the date the mandate issues. This understanding of the phrase "the court determines" is further supported by the dictionary definitions of "determine" that use the terms "fixing" and "settling," and by the practice under the FRAP, as reflected in the advisory committee notes and as accepted by courts. Furthermore, as a matter of policy, FDA believes that the parties to paragraph IV litigation are best served by a rule that, consistent with the statutory language, errs on the side of greater finality. Such a rule reduces the possibility that an appellate court opinion will be relied on and then overturned (through an adverse opinion after rehearing or rehearing en banc) in very short order. Accordingly, FDA concludes that, in determining the applicability of pediatric exclusivity, this language requires FDA to await issuance of the mandate before giving effect to an appellate court opinion that would overturn a district court's ruling.

In this case, therefore, for purposes of determining the applicability of Pfizer's pediatric exclusivity, FDA will continue to be governed by the district court decision upholding the validity of the patent unless or until the mandate is issued, effectuating the appellate court's judgment.[6] As a result, all of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity. If the mandate does not issue before September 25, 2007, when the pediatric exclusivity expires, Pfizer and Mylan will have no additional competition during the interim period and thus will obtain the full benefit that could be derived under pediatric and 180-day marketing exclusivity. In that event, the remaining issues discussed in this letter will be moot. However, given the possibility that the mandate making the panel decision effective may issue before September 25, 2007, FDA will continue with its analysis.

---

[5] Several commenters have cited an FDA Guidance document issued in March 2000. See, e.g., Mylan Comments at 2; Pfizer comments at 2. FDA is not relying on this guidance document, however, because it relates to a different statutory provision, with different language, context, and purposes.

[6] In this case, the district court found patent validity and infringement and the appellate court opinion found invalidity. Under these circumstances, FDA here declines to give effect to the appellate court's judgment of invalidity until the mandate issues and the patent and pediatric exclusivity attached to the patent block ANDA approvals in the interim. We note, however, that the agency's position on this also suggests that, had the district court found invalidity and the appellate court reached the contrary conclusion of validity and infringement, the converse would also be true: in spite of the appellate court opinion finding validity and infringement, ANDAs could be approved (or could retain their approvals) and neither the patent itself nor pediatric exclusivity would attach to that patent to block such approvals unless and until the mandate issued.

7

2. Apotex will Cease to be Subject to Pfizer's Exclusivity if the Mandate Issues before
September 25, 2007.

This is the first time that FDA has been called upon to determine whether an ANDA applicant is
subject to the innovator's pediatric exclusivity when the ANDA applicant has received a
*favorable* court decision in its paragraph IV litigation but has not yet obtained final approval
when the patent expires. The pediatric exclusivity provisions address several scenarios in
terms of the status of the ANDA applications, but there are several scenarios that they fail to
address, including this one.

The statute provides that, where the ANDA applicant submits paragraph IV certification, "if . . .
in the patent litigation resulting from the certification the court determines that the patent is valid
and would be infringed, the period during which an application may not be approved . . . shall be
extended by a period of six months after the date the patent expires . . . ." *See* 21 U.S.C.
§ 355a(c)(2)(B). Based on this language, FDA determines that the converse must also be true -
if in paragraph IV litigation a court determines that a patent is *invalid* or *not infringed*, pediatric
exclusivity will not bar approval of that applicant's ANDA. This is the implicit meaning and
logical interpretation of subsection 355a(c)(2)(B); otherwise, the qualification in that provision
regarding the victory for the patent holder in the patent litigation would make no sense and
would be superfluous, at least as to any ANDA that did not receive final approval before the
patent expired. In addition, this outcome is consistent with the goals of the 180-day exclusivity
statute which encourages patent challenges to remove barriers to approval. As noted, FDA had
previously opined that this was the logical interpretation of 355a(c)(2)(B), although FDA was not
directly applying that interpretation at that time. *See Mylan Labs., Inc.* v. *Thompson,* 332 F.
Supp. 2d at 124 (D.D.C. 2004) ("As the FDA has correctly noted in its papers, § 355a(c)(2)(B)
would apply 'where an ANDA applicant submits a paragraph IV certification, and prevails in the
patent litigation.'")(dicta, citing Federal Defendants' Memorandum in Opposition to Plaintiffs'
Motion for Preliminary Injunction and Summary Judgment and In Support of Cross Motion for
Summary Judgment at 38 (July 8, 2004)), *aff'd,* 389 F.3d 1272 (D.C. Cir. 2004). FDA therefore
concludes that, where an applicant has challenged a patent and has received a decision of
invalidity or non-infringement, that applicant will not be subject to the NDA holder's pediatric
exclusivity once that decision becomes effective.

FDA has previously been called upon to address other gaps in the pediatric exclusivity
provisions. Specifically, the paragraph III and paragraph IV provisions are silent on the
applicability of pediatric exclusivity to delay ANDA approvals where an ANDA applicant has a
paragraph III or IV certification and has not received final approval at the time the patent
expires. In determining the operation of the statute in those circumstances, FDA has relied on
the broader certification scheme under Hatch-Waxman.

It has been FDA's longstanding view, that, when a patent expires before pending patent
litigation is resolved, ANDA applicants who have not received final effective approval are
required under Hatch-Waxman, to change their paragraph III and paragraph IV certifications to
paragraph II certifications. Because, upon patent expiry, all ANDA applicants are presumed to
have paragraph II certifications, the paragraph II provision of the pediatric exclusivity statute, 21
U.S.C. § 355a(c)(2)(A)(i), would control. The D.C. Circuit has upheld this approach in two
recent decisions. See *Mylan Labs., Inc.* v. *Thompson,* 332 F. Supp. 2d 106, 124 (D.D.C. 2004),
*aff'd,* 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd.* v. *FDA,* 307 F. Supp. 2d 15 (D.D.C.
2004) *aff'd,* 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

8

In considering these earlier determinations regarding the switch to paragraph II certifications with today's decision regarding the non-applicability of pediatric exclusivity to applicants who prevail in patent litigation, FDA determines as follows. When the '303 patent expired on March 25, 2007, all of the unapproved ANDAs were required to change (or deemed to have changed) to paragraph II certifications and became subject to Pfizer's pediatric exclusivity at that time. That is their status during the period before the mandate issues. However, FDA believes that the language of the statute manifests a clear Congressional intent that pediatric exclusivity not block the approval of an ANDA where the ANDA applicant has prevailed in the paragraph IV patent litigation and therefore creates an exception to the application of the Hatch-Waxman certification provisions. Thus, if and when the mandate finalizing the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.

### 3. If the Mandate Issues Before the Expiration of Pediatric Exclusivity on September 25, 2007, ANDAs Other than Apotex May Not be Eligible for Immediate Approval.

Although Apotex is the only ANDA applicant to have obtained a favorable decision on the merits against Pfizer in the amlodipine besylate patent litigation, several commenters maintain that all or some of the other ANDAs should not be blocked by Pfizer's pediatric exclusivity because of the *Apotex* decision. Some maintain that, once the patent is declared invalid, it should be presumed delisted from the Orange Book. See Medco Comments at 7. That would mean that no ANDA applicants would be required to maintain their certifications to that patent, and pediatric exclusivity, by its literal terms, would not bar any approvals.

Others maintain that, once a patent is found invalid in litigation against one party, the patent owner is collaterally estopped from asserting infringement claims based on that patent against additional defendants. See, e.g. *Blonder-Tongue Labs., Inc.* v. *University of Ill. Found.*, 402 U.S. 313, 350 (1971). They argue that, applying collateral estoppel, all applicants who submitted paragraph IV certifications should be considered victorious in their individual patent litigation against Pfizer. At that point, they continue, the analysis applied to Apotex's ANDA should be applied to them as well so that their ANDAs would not be blocked by pediatric exclusivity. This would mean, according to at least one commenter, that ANDAs containing paragraph IV certifications at the time of patent expiration would be eligible for approval, while those containing paragraph III certifications would be blocked. See Teva Comments at 11-13.

Other commenters noted, however, that the *Apotex* decision addressed only claims 1-3 of an 11 claim patent. These commenters assert that the patent should stay listed in the Orange Book because some of the claims have not been declared invalid. See Mylan Comments at 1-2; Daiichi Sankyo Inc. Comments at 2. Nevertheless, another commenter maintains that there are no viable claims remaining for these products once claims 1-3 are declared invalid. See Caraco Pharmaceutical Labs, Ltd. at 3.

Patents are required to be listed in FDA's Orange Book if they claim the approved drug substance, approved drug product, or an approved method of use. 21 U.S.C. § 355(b)(1); 21 C.F.R. § 314.53. If the remaining claims do not provide a basis on which to list the patent (i.e., do not claim the approved drug substance, drug product, or an approved method of use), the patent would no longer be eligible for listing in the Orange Book. In such a case, the patent must be withdrawn by Pfizer and any pediatric exclusivity that attached to the patent will no longer serve as a barrier to ANDA approval. If, on the other hand, one or more of the remaining claims claims the approved drug substance, approved drug product, or approved method of use, the patent can remain properly listed until the expiration of pediatric exclusivity. In such a case, the patent should remain in the Orange Book and the remaining unapproved ANDAs are potentially subject to Pfizer's pediatric exclusivity.

It is not clear to FDA, based on the current record, whether the remaining claims of the '303 patent would provide a valid basis to list the patent if claims 1-3 are invalid. Moreover, FDA has long maintained that its has neither the expertise nor the resources to resolve patent issues and does not make independent determinations of the merits or applicability of patent claims. 59 Fed. Reg. 50338, 50342-43, 50345, 50349, 50352 (1994). FDA's ministerial role in the listing process has been upheld. *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1348-49 (Fed. Cir. 2003); *aaiPharma, Inc. v. Thompson*, 296 F.3d 227, 243 (4th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003); *Alphapharm Pty Ltd. v. Thompson*, 330 F. Supp 2d 1, 7-8 (D.D.C. 2004).

Because FDA lacks both relevant information and expertise to resolve this issue based on the information before it, in the absence of further judicial or other action clarifying the status of the patent, FDA will assume the '303 patent remains validly listed. If one or more of the remaining claims qualified the patent for listing as of the time the patent expired, all of the remaining ANDAs who had paragraph III and paragraph IV certifications at the time of patent expiry are required to maintain their paragraph II certifications. As such, those ANDAs will be blocked by Pfizer's pediatric exclusivity.

### 4. Mylan's Eligibility for 180-day Exclusivity Does Not Extend Beyond the Expiration of the Patent.

Mylan asserts that regardless of the applicability of pediatric exclusivity, all of the remaining ANDAs are subject to Mylan's 180-day exclusivity, which, if viable, would expire on September 19, 2007. Most commenters assert that it is well settled that 180-day exclusivity does not extend beyond the expiration of the patent. See, e.g., Apotex Comments at 8; Teva Comments at 6-7. Although Mylan acknowledges FDA's longstanding position that 180-day exclusivity expires with the patent, Mylan urges FDA to change that position, at least in the circumstances here, where the 180-day exclusivity has been triggered and begun to run before the patent expires.

By the terms of the statute, when a listed patent expires, a paragraph IV certification is no longer accurate. In these circumstances, the statute and FDA's regulations require ANDA applicants to change from a paragraph IV certification stating that the patent "is invalid or will not be infringed" to a paragraph II certification stating "that such patent has expired." 21 U.S.C. § 355(j)(2)(A)(vii)(II),(IV); 21 C.F.R. § 314.94(a)(12)(viii)(C) ("an applicant shall amend a submitted certification if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate"). In cases where an applicant neglects to amend its certification to a paragraph II certification after a patent expires, FDA will treat it as having done so. This approach was upheld in *Dr. Reddy's Laboratories, Inc. v. Thompson*, 302 F. Supp. 2d 340 (D.N.J. 2003) and *Ranbaxy Labs., Ltd. v. FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

As noted above, applications with paragraph II certifications are eligible for immediate effective approval; the patent ceases to be a barrier to that approval upon its expiration. 21 U.S.C. § 355(j)(2)(A)(ii); 21 U.S.C. § 355(j)(5)(B)(i)(where an applicant files a paragraph II certification, approval of the applicant's ANDA "may be made effective immediately"); 21 C.F.R. § 314.94(a)(12)(viii). Thus, consistent with the statutory language and purpose of 180-day exclusivity, FDA has consistently construed the statute to award 180-day exclusivity based upon paragraph IV certifications only to unexpired patents. See 59 Fed. Reg. 50338, 50348 (stating "a patent is deemed to be relevant [for exclusivity purposes] until the end of the term of the patent or applicable 180-day period, whichever occurs first"). Because only subsequent applicants with valid paragraph IV certifications are blocked by 180-day exclusivity, and

10

because paragraph IV certifications cease to be accurate once the patent expires, the patent and 180-day exclusivity based on a paragraph IV certification to that patent cease to prevent approval of subsequent ANDAs once the patent expires.[7] See Ranbaxy Labs., Ltd. v. Leavitt, 469 F.3d 120, 126 (D.C. Cir. 2006)("[T]he first generic applicant may no longer retain exclusivity when the patent has expired.").

This plain language reading of the statute effectuates the statutory goals. The 180-day exclusivity provisions were drafted to give ANDA applicants an incentive to be first to challenge a listed patent and remove that patent as a barrier to approval. Once a listed patent expires and is no longer a barrier to ANDA approval, there is no longer a need to provide an incentive to challenge it in court. Thus, an expired patent does not serve as the basis for a 180-day exclusivity award and 180-day exclusivity does not extend beyond the life of the patent.

Mylan has argued that 21 U.S.C. § 355a(k) compels the conclusion that 180-day exclusivity extends beyond the date the patent expires. See Mylan comments at 7-8. That section provides that:

> If [180-day exclusivity period] overlaps with a 6-month [pediatric exclusivity] period . . ., so that the applicant for approval of a drug under section 505(j) entitled to the 180-day period under that section loses a portion of the 180-day period to which the applicant is entitled for the drug, the 180-day period shall be extended from
>> (1) the date on which the 180-day period would have expired by the number of days of overlap, if the 180-day period would, but for application of this subsection, expire after the 6-month exclusivity period; or
>> (2) the date on which the 6-month exclusivity period expires, by the number of days of the overlap if the 180-day period would, but for application of this subsection, expire during the six-month exclusivity period.

21 U.S.C. § 355a(k). On its face, this section is inapplicable here because Mylan is approved and is not subject to Pfizer's pediatric exclusivity and, thus, there is no 180-day exclusivity to restore. No commenters appear to contend otherwise.

Instead, Mylan argues that, by providing, in circumstances not applicable here, that 180-day exclusivity will follow pediatric exclusivity, Congress must have been assuming that 180-day exclusivity survives patent expiration. See Mylan comments at 7-8. If Mylan were correct, then section 355a(k) would conflict with FDA's longstanding understanding of the Hatch-Waxman statutory provisions governing 180-day exclusivity, as discussed above, which FDA believes to be compelled by the plain language of the statute. Thus, Mylan is essentially arguing that section 355a(k) repealed part of the Hatch-Waxman 180-day exclusivity provisions.

For one federal statute to repeal another:

---

[7] We note that if Mylan were correct and 180-day exclusivity continued to block approvals of ANDAs with paragraph IV certifications after the patent expired (essentially ignoring the automatic switch of the certifications to paragraph II), 180-day exclusivity would block ANDAs containing paragraph IV certification but not those containing paragraph III certifications under the plain language of 21 U.S.C § 355(j)(5)(B)(iv). This would have the perverse effect of punishing applicants who took the risk of challenging a patent with a paragraph IV certification in order to remove a barrier to approval and to reward those applicants who sat back and waited for the patent to expire. This result is clearly inconsistent with the intent and logic of Hatch-Waxman. Thus, the fact that section 355(j)(5)(B)(iv) by its terms blocks only ANDAs containing paragraph IV certifications -- the only ANDA that can be approved before the expiration of an applicable patent -- indicates that Congress did not intend exclusivity to extend beyond patent expiration.

> [T]he intention of the legislature to repeal must be clear and manifest. . . . In
> practical terms, this "cardinal rule" means that in the absence of some affirmative
> showing of an intention to repeal, the only permissible justification for a repeal by
> implication is when the earlier and later statutes are irreconcilable.

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 189 (1978) (citations omitted). The "irreconcilable conflict" required is a conflict

> in the sense that there is a positive repugnancy between [the two statutes] or that
> they cannot mutually coexist. It is not enough to show that the two statutes
> produce differing results when applied to the same factual situation, for that no
> more than states the problem.

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) (emphasis added). Here, there is no evidence that Congress ever affirmatively indicated that it intended to repeal or change the operation of the 180-day exclusivity provision in enacting section 355a(k).

Nor can Mylan show that the 180-day provisions in Hatch-Waxman and section 355a(k) are irreconcilable because it is possible to construe them in a way that they can mutually coexist. By its terms, section 355a(k) only addresses the curtailment of exclusivity to which the applicant is otherwise "entitled." As explained above, under Hatch-Waxman, the applicant is not entitled to exclusivity after the patent expires. That means, in reconciling the statutes, that the application of section 355a(k) is limited to the situation where there is more than one patent and the two exclusivity periods are each attached to different patents. Thus, one patent may expire, and pediatric exclusivity would start to run, but the ANDA applicant could still be eligible for 180-day exclusivity on a later patent that had not yet expired. If that 180-day exclusivity period were triggered by a court decision on the later patent, it would be running at the same time the ANDA was blocked from approval by the pediatric exclusivity on the earlier patent.

Indeed, the legislative history demonstrates that Congress intended to address this narrow situation by adding 21 U.S.C. § 355a(k) to restore the exclusivity to which the ANDA applicant was entitled but which otherwise would have been lost because the pediatric exclusivity on another patent blocked final effective approval:

> The amendment gives the filer of an [ANDA] who challenges a patent no more
> and no less time to market his drug exclusively before subsequent [ANDAs] for
> the drug may be approved then it would have received but for the intervening
> period of pediatric exclusivity.
> For example, the committee understands that there may be instances in which 2
> patents on a drug are challenged in an [ANDA], and that, in subsequent litigation,
> a court holds the first patent to expire to be valid and infringed, and the second
> patent to expire to be invalid. If the section [355(b)(1), 21 U.S.C.] drug is granted
> a period of pediatric exclusivity with respect to the first patent, and if the court
> decision, which triggers the beginning of ANDA exclusivity, falls 60 days before
> that period of pediatric exclusivity begins (that is, 60 days before the first patent
> will expire), the ANDA exclusivity will overlap with the pediatric exclusivity for 120
> days. In the absence of the pediatric exclusivity, the holder of the [ANDA] would
> enjoy at most 120 days to market its drug before a subsequent [ANDA] for the
> drug could be approved. But for the amendment, because of pediatric
> exclusivity, the holder of the [ANDA] would enjoy no ANDA exclusivity, because

12

the first 120 days of the pediatric exclusivity period would run over the last 120 days of its ANDA exclusivity period.

S. Rep. No. 107-79, at 6-7 (2001); see also *id.* at 14 ("[Section 9 of BPCA] specifies that, when the pediatric exclusivity period for a drug overlaps with a period of ANDA exclusivity for the drug, the period of ANDA exclusivity is extended by an amount necessary to ensure that the holder of ANDA exclusivity enjoys the same possibility of exclusive commercial marketing as that the holder would have enjoyed in the absence of pediatric exclusivity, no more and no less."). This language confirms both that Congress intended only the limited application of section 355a(k) and that this section can be construed consistently with the Hatch-Waxman exclusivity provisions. Thus, "[b]ecause the statutes are not irreconcilable and there is no convincing evidence that the later act was intended as a substitute, . . . . a repeal by implication did not occur." *United States v. Williams*, 216 F.3d 1099, 1102 (D.C. Cir. 2000).

Furthermore, the statute also does not distinguish, as Mylan proposes, between situations in which 180-day exclusivity has been awarded and triggered at the time of patent expiry and cases in which it has not. See Mylan Comments at 12-14. Although Mylan correctly notes that the obligation to update a patent certification only applies before the effective date of approval, *id.* at 14; Mylan's Petition for Stay at 3, and thus approved applications (such as Mylan's) have no continuing obligation to update their patent certifications, this does not mean that 180-day exclusivity for an approved application extends beyond the date the patent expires. On the contrary, if all of the remaining unapproved applications change to a paragraph II certification when the patent expires, as they are required to do, they will no longer be applications containing paragraph IV certifications that are blocked by the previous application containing a paragraph IV certification. This is the case regardless of whether Mylan's application, which has been approved, is also required to change its certification. As a result, because all unapproved applications must change to a paragraph II certification when the patent expires, and applications with paragraph II certifications are not blocked by 180-day exclusivity, for all intents and purposes, Mylan's 180-day exclusivity will terminate with the expiration of the patent regardless of the fact that Mylan itself is no longer obligated to change its certification upon patent expiry.

Conclusion

In sum, FDA has concluded:

- All of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity.
- If and when the mandate effectuating the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.
- FDA cannot determine on the current record whether other ANDAs will continue to be blocked by pediatric exclusivity at that time.
- Mylan's 180-day marketing exclusivity terminated when the patent expired.

If you have any questions regarding this letter please contact Cecelia Parise, Regulatory Policy Advisor to the Director, Office of Generic Drugs at 240-276-9319

Sincerely,

Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research
Food and Drug Administration

cc: Pfizer Inc.

14

# Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NU-PHARM INC.<br>50 Mural Street, Units 1 and 2<br>Richmond Hill, Ontario L4B I E4,<br><br>            Plaintiff,<br>    v.<br><br>FOOD AND DRUG ADMINISTRATION<br>5600 Fishers Lane<br>Rockville, Maryland 20857,<br><br>MICHAEL O. LEAVITT<br>Secretary of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201, and<br><br>ANDREW C. VON ESCHENBACH, M.D.<br>Commissioner of Food and Drugs<br>5600 Fishers Lane<br>Rockville, Maryland 20857,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

## DECLARATION OF RICHARD BENYAK

I, RICHARD BENYAK, hereby declare as follows:

1.    I am the founder and President of Nu-Pharm Inc. ("Nu-Pharm"), which is located

in Ontario, Canada. I have personal knowledge of the facts set forth herein, or believe them to

be true based on my experience in the pharmaceutical industry and information I have received

in the course of my duties, and am competent to testify as to the same. I respectfully submit this

declaration in support of Nu-Pharm's motion for temporary restraining order and/or preliminary

injunction.

2.    Nu-Pharm is a small Canadian-based pharmaceutical company that markets and sells generic drug products, primarily for sale in niche markets in Canada. Nu-Pharm currently markets and sells a number of generic drug products in Canada that are manufactured by Apotex Inc., a Canadian-based pharmaceutical company that develops and manufactures quality generic medicines.

**A.    Nu-Pharm's ANDA For Divalproex Sodium Delayed-Release Tablets, 500 mg.**

3.    On March 7, 2005, Nu-Pharm filed Abbreviated New Drug Application ("ANDA") No. 77-615 with the U.S. Food and Drug Administration ("FDA") seeking regulatory approval to market a generic version of divalproex sodium delayed-release tablets in the 500 mg strength—a drug product currently marketed in the United States solely by Abbott under the brand-name Depakote® for the treatment of epilepsy. This is the first ANDA that Nu-Pharm has filed seeking approval to market and sell a generic drug product in the United States. Nu-Pharm's ANDA designates Apotex Inc. and its Canadian facilities as Nu-Pharm's manufacturer of generic divalproex sodium tablets. To my knowledge and understanding, Nu-Pharm has satisfied all substantive requirements for approval of its 500 mg product.

4.    Nu-Pharm's ANDA contains a so-called "paragraph IV certification" to the two patents listed in the FDA's "Orange Book" in connection with Depakote®: U.S. Patent Nos. 4,988,731 ("the '731 patent") and 5,212,326 ("the '326 patent"), which are both set to expire on January 29, 2008. It is my understanding that the FDA has also awarded Abbott a six-month period of pediatric exclusivity in connection with these patents that only would apply to and delay approval of ANDAs that did not already have final approval prior to the expiration of Abbott's patents. On May 12, 2005, Nu-Pharm sent notice of its ANDA and paragraph IV

2

certification to Abbott, the patent owner and NDA-holder for Depakote®. Abbott received Nu-Pharm's notice on May 13, 2005.

5.    On June 24, 2005, Abbott filed suit against Nu-Pharm in the United States District Court for the Northern District of Illinois, alleging infringement of the '731 and '326 patents. As a result, Nu-Pharm's divalproex sodium 500 mg ANDA was subject to a 30-month stay of FDA approval. This 30-month stay expired on November 13, 2007. It is my understanding that the Illinois court hearing the patent infringement action between Abbott and Nu-Pharm has made no findings of patent validity or infringement.

6.    Upon the expiration of the 30-month stay, Nu-Pharm requested, and expected to receive, final FDA approval immediately so that Nu-Pharm could begin marketing its 500 mg product in the United States after the expiration of Abbott's patents, without any further delay as a result of Abbott's pediatric exclusivity.[1] It is my understanding, however, that, on December 11, 2007, and again on January 9, 2008, FDA refused to approve Nu-Pharm's 500 mg product based on an order entered as a consequence of contempt proceedings in a separate patent infringement action between Abbott and Apotex.

**B.    Nu-Pharm Will Suffer Significant Irreparable Harm If FDA's Administrative Decision Is Allowed To Stand.**

7.    If FDA grants Nu-Pharm the final approval for the 500 mg product to which it is lawfully entitled before the natural expiration of Abbott's patents on January 29, 2008, it is my understanding that Nu-Pharm would not be subject to Abbott's pediatric exclusivity. In that event, Nu-Pharm could be one of the only applicants entitled to market a 500 mg generic divalproex sodium product for six months after January 29, 2008. This would be a critical and

---

[1]  Nu-Pharm will not and cannot market or sell any of its divalproex sodium products in the United States until after the expiration of Abbott's patents on January 29, 2008, and after Nu-Pharm receives final FDA approval to do so.

enormous generic opportunity for Nu-Pharm in the U.S. market.  Nu-Pharm will suffer devastating and unrecoverable irreparable harm if it is not awarded immediate final approval for its 500 mg product prior to the natural expiration of the '731 and '326 patents, which could preclude Nu-Pharm from lawfully competing in the U.S. market for at least another six months after expiration of Abbott's patents.  After that time, Nu-Pharm would be faced with generic competition from at least another half dozen generic applicants, most if not all of whom have considerably more market advantages and established relationships with customers, as well as a far larger number of sales representatives, that would effectively eliminate Nu-Pharm's investment and ability to compete in the ultra-competitive U.S. market.

8.     In particular, if Nu-Pharm's 500 mg ANDA is awarded final approval prior to expiration of the '731 and '326 patents and enters the market shortly after patent expiration, Nu-Pharm reasonably expects that, even with an authorized generic product on the market, Nu-Pharm would generate revenues of at least $139 million within the first full year on the market.

9.     If, however, Nu-Pharm is forced to await the expiration of Abbott's period of pediatric exclusivity with all of the other 500 mg ANDA-filers, Nu-Pharm's projected revenues would not exceed $6.5 million during the first year on the market.  This represents a total loss of over $132.5 million in sales during Nu-Pharm's first full year on the market.  This loss will cause severe harm to, and in fact will effectively destroy, Nu-Pharm's U.S. business.  It is also my understanding that these losses are completely unrecoverable from the FDA.

10.     But apart from the lost opportunity for significant and company-transforming divalproex sodium sales, Nu-Pharm will also suffer unquantifiable losses and harm to its business and reputation.  As noted above, this is Nu-Pharm's first foray into the ultra-competitive generic market in the United States.  Nu-Pharm will lose access to major customers and

4

contracts, as well as suffer a loss of goodwill that will adversely effect Nu-Pharm's ability to compete in the United States. In short, such losses will effectively destroy Nu-Pharm's only U.S. business opportunity. The public will also suffer from the loss of the earlier availability of a lower-priced generic version of this important medicine.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 11, 2008.

_____
RICHARD BENYAK

# Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit E

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3714 | **DATE** | 10/16/2006 |
| **CASE TITLE** | Abbott Laboratories vs. Nu-Pharm, Inc. | | |

**DOCKET ENTRY TEXT**

Motion to stay (121) is granted. Proceedings on all pending motions are stayed.

Docketing to mail notices.

00:18

| | | Courtroom Deputy Initials: | ETV |
|---|---|---|---|

05C3714 Abbott Laboratories vs. Nu-Pharm, Inc.

# Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit F

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3714 | **DATE** | 10/31/2007 |
| **CASE TITLE** | Abbott Laboratories vs. Nu-Pharm, Inc. | | |

**DOCKET ENTRY TEXT**

Status hearing held on 10/31/2007. Stay of these proceedings remains in place. Status hearing set for 1/8/2008 at 9:00.

Docketing to mail notices.

00:13

| | Courtroom Deputy Initials: | ETV |
|---|---|---|

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Abbott Laboratories

                              Plaintiff,

v.                                          Case No.: 1:05−cv−03714
                                            Honorable Rebecca R. Pallmeyer

Nu−Pharm, Inc., et al.

                              Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, January 4, 2008:

     MINUTE entry before Judge Rebecca R. Pallmeyer :By agreement, status hearing set for 1/8/2008 is stricken and reset to 1/14/2008 at 09:00 AM. Mailed notice(etv, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Abbott Laboratories

      Plaintiff,

v.             Case No.: 1:05−cv−03714
             Honorable Rebecca R. Pallmeyer

Nu−Pharm, Inc., et al.

      Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, January 14, 2008:

  MINUTE entry before Judge Rebecca R. Pallmeyer :Status hearing held on 1/14/2008. Status hearing set for 4/17/2008 at 09:00 AM. Mailed notice(etv, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit G

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 2.5**
**Eastern Division**

Abbott Laboratories

                    Plaintiff,

v.

                                     Case No.: 1:97−cv−07515
                                     Hon. Richard A. Posner

Torphram, Inc., et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, October 6, 2006:

      MINUTE entry before Judge Richard A. Posner dated 10/6/06: Enter Opinion: The injunction has been violated. Should the violation continue, Apotex−a large, successful, and sophisticated enterprise−will be risking heavy sanctions or its willful disobedience of the injunction. For the present, however, it will suffice to extend the injunction to embrace the Nu−Pharm ANDA, Conoco, Inc. v. Energy & Environmental Int'l, L.C., supra, 2006 U.S. App. LEXIS 21036, at 39; the extended injunction is attached to this opinion.Judicial staff mailed notice(gl, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

ABBOTT LABORATORIES,                              )
                                                  )
              *Plaintiff,*                        )
                                                  )   No. 97 C 7515
       v.                                         )
                                                  )   Judge Richard A. Posner
APOTEX, INC., and                                 )     sitting by designation.
APOTEX CORPORATION,                               )
                                                  )
              *Defendants.*                       )
                                                  )

## INJUNCTION ORDER

RICHARD A. POSNER, Circuit Judge:


       Apotex, Inc., Apotex Corp., and their respective affiliates, successors in interest, and assigns are enjoined from commercially manufacturing, using, selling, or offering to sell generic divalproex sodium which the Court has found to be infringing, including divalproex sodium products synthesized using the processes employed in connection with ANDA No. 77-615, within the United States, or from importing such products into the United States, until Abbott's U.S. Patent Nos. 4,988,731 and 5,212,326 expire and defendants have received final approval from FDA to market generic divalproex sodium.

       The effective date of any approval by FDA of ANDA Nos. 75-112 and 77-615, or any other application concerning defendants' generic divalproex sodium which the Court has found to be infringing, shall be no earlier than January 29, 2008, the date of expiration of Abbott's U.S. Patent Nos. 4,988,731 and 5,212,326.

IT IS SO ORDERED.

                                   ENTER:

                                   *[signature]*

                                   RICHARD A. POSNER, Circuit Judge
                                   United States District Court

DATED: October 06, 2006

Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary*
*Restraining Order and/or Preliminary Injunction*

# Exhibit H

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| Abbott Laboratories | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 97 C 7515 |
| TorPharm, Inc., et al. | |

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to trial before the Court. The issues have been tried and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that

1. In accordance with the Court's opinion of March 15, 2004, judgment has been rendered in favor of Abbott Laboratories and against defendants TorPharm, Inc., Apotex, Inc., and Apotex Corp.

2. The attached injunction order is issued effective this day.

3. Pursuant to Federal Rule of Civil Procedure 54, the Court awards costs in favor of Abbott Laboratories. Abbott shall submit an appropriate bill of costs pursuant to Northern District of Illinois Local Rule 54.1 within 30 days of entry of this Order.

APR 0 1 2004

Michael W. Dobbins, Clerk of Court

Date: 3/31/2004

Deputy Clerk

319

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 97 C 7515 |
| | ) |
| TORPHARM, INC., a Canadian corporation, | ) Judge Richard A. Posner |
| APOTEX, INC., a Canadian corporation, and | ) sitting by designation. |
| APOTEX CORPORATION, a Delaware corporation, | ) |
| | ) |
| *Defendants.* | ) |

APR 0 1 2004

### INJUNCTION ORDER

RICHARD A. POSNER, Circuit Judge, sitting by designation:

TorPharm, Inc., Apotex, Inc., Apotex Corp., and their respective affiliates, successors in interest, and assigns are enjoined from commercially manufacturing, using, selling, or offering to sell generic divalproex sodium which the Court has found to be infringing within the United States, or from importing such product into the United States, until Abbott's U.S. Patent Nos. 4,988,731 and 5,212,326 expire and defendants have received final approval from FDA to market generic divalproex sodium.

The effective date of any approval by FDA of ANDA No. 75-112, or any other application concerning defendants' generic divalproex sodium which the Court has found to be infringing, shall be no earlier than January 29, 2008, the date of expiration of Abbott's U.S. Patent Nos. 4,988,731 and 5,212,326.

IT IS SO ORDERED.

ENTER:

RICHARD A. POSNER, Circuit Judge
United States District Court

DATED: *March 31, 2004*

# Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit I

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3714 | **DATE** | 8/17/2006 |
| **CASE TITLE** | Abbott Laboratories vs. Nu-Pharm, Inc. | | |

---

**DOCKET ENTRY TEXT**

Plaintiff's motion to stay proceedings (121) entered and continued to 9/13/06 at 8:45. Plaintiff's motion to compel discovery (106) and Nu Pharm's motion to strike continued to 9/13/05 at 8:45. 8/28/06 status date stricken.

Docketing to mail notices.

00:14

| | Courtroom Deputy Initials: | ETV |
|---|---|---|

Declaration of William A. Rakoczy

*In support of Nu-Pharm's Motion for Temporary Restraining Order and/or Preliminary Injunction*

# Exhibit J



6 WEST HUBBARD STREET
SUITE 500
CHICAGO, IL 60610
www.rmmslegal.com

312-527-2157 main phone
312-527-4205 main fax

William A. Rakoczy
312.222.6301 telephone
312.222.6321 facsimile
wrakoczy@rmmslegal.com

Christine J. Siwik
312.222.6304 Direct Phone
312.222.6324 Direct Fax
csiwik@rmmslegal.com

December 21, 2007

**HIGHLY CONFIDENTIAL, TIME-SENSITIVE
CONTROLLED ANDA CORRESPONDENCE**

**VIA FEDEX AND E-MAIL**

Gary Buehler
Director, Office of Generic Drugs
Center for Drug Evaluation and Research
U.S. Food and Drug Administration
HFD-600, Metro Park North 4
7500 Standish Place, Room 3020
Rockville, MD 20855
gary.buehler@fda.hhs.gov

Re:    **Nu-Pharm Inc. ANDA No. 77-615**
**Divalproex Sodium Delayed-Release Tablets 500 mg**

Dear Mr. Buehler:

        On behalf of Nu-Pharm Inc. ("Nu-Pharm), we respectfully request immediate final approval of Nu-Pharm's ANDA No. 77-615 for Divalproex Sodium Delayed-Release Tablets 500 mg. Nu-Pharm is lawfully entitled to this approval now that the 30-month statutory stay under 21 U.S.C. § 355(j)(5)(B)(iii) has expired. Further, given the recent expiration of the 30-month stay and upcoming expiration of the Orange Book-listed patents, this request is time-sensitive. Nu-Pharm, therefore, requests a response from the Agency no later than January 7, 2008. If the Agency does not respond by that time, Nu-Pharm will assume that its request has been denied and reserves all rights to proceed accordingly.

**I.    Introduction.**

        Nu-Pharm has submitted an ANDA for divalproex sodium delayed-release tablets 500 mg that, to Nu-Pharm's knowledge, satisfies all substantive requirements for approval. Its ANDA contains a paragraph IV certification to the only Orange Book-listed patents for the reference listed drug, Abbott's Depakote®. In response to the filing of Nu-Pharm's paragraph IV ANDA, Abbott sued Nu-Pharm for alleged infringement under 35 U.S.C. § 271(e)(2)(A) in the

Gary Buehler                                      **HIGHLY CONFIDENTIAL**
Director, Office of Generic Drugs                 **UNDER NU-PHARM'S ANDA**
December 21, 2007
Page 2

United States District Court for the Northern District of Illinois, Eastern Division. This suit triggered an automatic 30-month stay of FDA approval of Nu-Pharm's ANDA, which expired on November 13, 2007. The Illinois action is currently stayed, and no court decision of any kind has issued.

On the Federal Food, Drug, and Cosmetic Act ("FFDCA"), as amended by the Hatch-Waxman Amendments and the Medicare Prescription Drug, Improvement, and Modernization Act, FDA must approve Nu-Pharm's ANDA upon the expiration of the 30-month stay unless, before that time, the Illinois court hearing the Nu-Pharm patent infringement action decides that Nu-Pharm's proposed divalproex sodium products infringe the patents at issue. *See* 21 U.S.C. § 355(j)(5)(B)(iii). But no such order or judgment has ever been issued by the Illinois court. Accordingly, Nu-Pharm reasonably expected to receive final FDA approval after expiration of the 30-month stay on November 13, 2007. FDA has no lawful basis or authority to withhold Nu-Pharm's approval.

On or about December 6, 2007, Agency personnel informed Nu-Pharm that FDA will only grant tentative approval of Nu-Pharm's ANDA based on findings made in a contempt proceeding in another action *to which Nu-Pharm is not a party*. FDA's refusal to grant final approval on this ground is arbitrary, capricious, an abuse of discretion, and contrary to law. The FFDCA does not permit or authorize FDA to withhold approval based on findings and determinations made in a district court action to which Nu-Pharm was not a party and that did not arise from the filing of Nu-Pharm's paragraph IV ANDA. The statute clearly and unambiguously provides that approval may be withheld only based on a finding of infringement in the court hearing the patent action that arose out of the filing of Nu-Pharm's paragraph IV certification. Neither the courts nor FDA have ever interpreted the statute to allow approvals to be affected by unrelated court actions to which the ANDA applicant is not a party, and which did not arise from that applicant's paragraph IV ANDA. To the extent FDA has adopted a contrary interpretation here, such an interpretation not only violates the plain language and purpose of the statute, but also leads to absurd and inconsistent results that Congress could not possibly have contemplated. In short, any such interpretation would be unlawful.

Accordingly, because FDA has no lawful basis or authority to withhold Nu-Pharm's approval, the Agency should, and indeed must, issue final approval immediately.

## II.    Background.

The material facts regarding Nu-Pharm's ANDA, which the Agency must consider in its analysis, are as follows.

### A.    RLD: Depakote® (Divalproex Sodium) Delayed-Release Tablets 500 Mg.

The reference listed drug at issue is Abbott's Depakote® (Divalproex Sodium) Delayed-Release Tablets 500 mg, which FDA approved on March 10, 1983, pursuant to NDA No. 18-723, for the treatment of epilepsy. Abbott has submitted information to FDA on two

Gary Buehler                                    **HIGHLY CONFIDENTIAL**
Director, Office of Generic Drugs               **UNDER NU-PHARM'S ANDA**
December 21, 2007
Page 3

patents that are currently listed in the Orange Book in connection with Depakote® (Divalproex Sodium) Delayed-Release Tablets 500 mg and NDA No. 18-723: U.S. Patent Nos. 4,988,731 ("the '731 patent") and 5,212,326 ("the '326 patent"), both of which are set to expire naturally on January 29, 2008. FDA recently awarded Abbott's Depakote® products pediatric exclusivity, which expires July 29, 2008.

**B.     Nu-Pharm's ANDA No. 77-615 For Divalproex Sodium Delayed-Release Tablets USP, 500 Mg.**

On March 7, 2005, Nu-Pharm submitted ANDA No. 77-615 for generic Divalproex Sodium Delayed-Release Tablets USP, 500 mg.[1] Nu-Pharm's original ANDA included a paragraph IV certification to both the '731 and '326 patents, stating that Nu-Pharm's generic divalproex sodium product would not infringe these patents and/or that such patents are invalid. Nu-Pharm's ANDA also designates and identifies Apotex Inc. of Ontario, Canada, as the contract manufacturer for the finished drug product.

In an "acceptance for filing" letter dated May 9, 2005, FDA informed Nu-Pharm that its ANDA was acceptable for filing and substantive review as of March 9, 2005. FDA also instructed Nu-Pharm to send the requisite notice of its paragraph IV ANDA to the patent owner and NDA-holder.

On May 12, 2005, Nu-Pharm sent the requisite notice of its ANDA and paragraph IV certification to Abbott, the patent owner and NDA-holder for Depakote®. That notice included the detailed factual and legal basis for Nu-Pharm's paragraph IV certification to the '731 and '326 patents. Abbott received that notice on May 13, 2005.

**C.     Pending § 271(e)(2)(A) Patent Litigation Against Nu-Pharm In *Abbott v. Nu-Pharm*, No. 05-3714 (N.D. Ill.).**

On June 24, 2005, Abbott filed suit against Nu-Pharm in the United States District Court for the Northern District of Illinois, Eastern Division, alleging infringement of the '731 and '326 patents under 35 U.S.C. § 271(e)(2)(A). *See Abbott v. Nu-Pharm*, No. 05-3714 (N.D. Ill.) (hereinafter "the *Nu-Pharm* action" or "the *Nu-Pharm* Court"). The *Nu-Pharm* action is the one and only patent infringement action that Abbott filed in response to the submission of Nu-Pharm's paragraph IV ANDA. The *Nu-Pharm* action triggered an automatic 30-month statutory stay of FDA approval of Nu-Pharm's 500 mg ANDA that expired on November 13, 2007. The *Nu-Pharm* Court has not extended that stay. Nor has the *Nu-Pharm* Court entered any substantive rulings or orders on the merits of the patent infringement dispute, and certainly has not made any determination of patent infringement or validity.

---

[1] Nu-Pharm subsequently amended its ANDA to include the 125 mg and 250 mg strength delayed-release tablets as well. Those products are not at issue here, and so are not addressed further.

Gary Buehler
Director, Office of Generic Drugs
December 21, 2007
Page 4

**HIGHLY CONFIDENTIAL**
**UNDER NU-PHARM'S ANDA**

     In fact, on October 16, 2006, the *Nu-Pharm* Court stayed the *Nu-Pharm* action in its entirety pending resolution of contempt proceedings against an unrelated third-party (Apotex) in another matter involving the same patents but a different ANDA. To date, the *Nu-Pharm* action remains stayed.

    **D.**    **Contempt Proceedings Against Apotex In *Abbott v. Apotex*, No. 97-7515 (N.D. Ill.), To Which Nu-Pharm Was Not And Is Not A Party.**

     In a contempt proceeding in a wholly separate action against Apotex, *to which Nu-Pharm is not and was **not** a party*, a different district court extended an injunction order involving an entirely different ANDA filed by Apotex (ANDA No. 75-112) to cover Nu-Pharm's ANDA No. 77-615. *See Abbott v. Apotex*, No. 97-7515 (N.D. Ill.) (hereinafter "the *Apotex* Court" or "the *Apotex* action"). The *Apotex* Court also ordered that the effective date of approval of the Nu-Pharm ANDA No. 77-615 shall not be earlier than expiration of the '731 and '326 patents on January 29, 2008. Significantly, Nu-Pharm was not and is not a party to the *Apotex* action in any manner. The *Apotex* action also involved, and jurisdiction was based on, a completely different paragraph IV ANDA filed by Apotex, ***not** Nu-Pharm*.

     Specifically, the *Apotex* action arises out of the submission of Apotex's ANDA No. 75-112 for divalproex sodium delayed-release tablets. Apotex's ANDA No. 75-112 also included paragraph IV certifications to the '731 and '326 patents. In response, Abbott sued Apotex for alleged infringement in Illinois. After a trial and two appeals, the Apotex ANDA was eventually held to infringe the '731 and '326 patents. As a result, the *Apotex* Court entered an order enjoining the commercial manufacture, sale, and use of the products described in Apotex's ANDA No. 75-112, and also delayed the effective date of approval, until expiration of Abbott's '731 and '326 patents on January 29, 2008. But once again, Nu-Pharm was never a party to— and never participated in—the *Apotex* action, which was completed long before Nu-Pharm ever submitted its own ANDA.

     After the completion of fact discovery in the current and unrelated *Nu-Pharm* action, NuPharm filed a motion for summary judgment of non-infringement before the *Nu-Pharm* Court. That same day, however, rather than respond to Nu-Pharm's summary judgment motion, Abbott initiated contempt proceedings in the old *Apotex* action against Apotex.[2] In particular, Abbott filed a motion to enforce the prior injunction order against Apotex in the *Apotex* action, and requested that the *Apotex* Court extend its injunction over the Apotex ANDA No. 75-112 to cover Nu-Pharm's wholly separate ANDA No. 77-615. Abbott argued, among other things, that Apotex had violated the *Apotex* Court's injunction by assisting in the filing of the Nu-Pharm ANDA, and that the Nu-Pharm and Apotex products were the same. Abbott also filed a motion to stay the *Nu-Pharm* action pending resolution of the contempt proceeding in the *Apotex* action. As noted above, the *Nu-Pharm* Court subsequently granted the motion to stay, and the *Nu-Pharm* action has been stayed ever since.

---

[2]  Abbott clearly did so because Nu-Pharm's summary judgment motion contained unequivocal evidence of non-infringement.

Gary Buehler                                          **HIGHLY CONFIDENTIAL**
Director, Office of Generic Drugs                     **UNDER NU-PHARM'S ANDA**
December 21, 2007
Page 5

Meanwhile, the *Apotex* Court conducted a one-day summary contempt proceeding in the *Apotex* action, and refused to allow Apotex any time to conduct additional testing and to submit additional evidence. Again, Nu-Pharm was not a party to the *Apotex* action and did not participate in the contempt proceedings to any extent.

On October 6, 2006, despite the fact that Nu-Pharm was not a party to the *Apotex* action or the contempt proceedings, the *Apotex* Court nonetheless granted Abbott's motion, entered a contempt order, and purported to "extend the injunction" over the Apotex ANDA to cover and embrace the Nu-Pharm ANDA as well.

Apotex timely appealed the new injunction to the United States Court of Appeals for the Federal Circuit. On October 11, 2007, the Federal Circuit rightly reversed the *Apotex* Court's finding of contempt against Apotex because the injunction did not preclude or otherwise forbid the filing of another ANDA by Nu-Pharm or Apotex. The Federal Circuit, however, affirmed the extension of the injunction to cover the Nu-Pharm ANDA. The Federal Circuit recently denied Apotex's petition for rehearing *en banc*. Apotex intends to file a petition for *certiorari* to the United States Supreme Court shortly.

E.   **FDA Unlawfully Refuses To Grant Final Approval Of Nu-Pharm's ANDA Based On An Order From The *Apotex* Action—To Which Nu-Pharm Is Not A Party.**

After expiration of the 30-month stay arising out of the *Nu-Pharm* action on November 13, 2007, Nu-Pharm duly requested from FDA the final approval to which it is lawfully entitled. On December 11, 2007, the Agency informed Nu-Pharm that it would not grant such an approval, but rather only a tentative approval based on the order in the *Apotex* action, which Abbott purportedly provided to the Agency. FDA has not provided to Nu-Pharm whatever submissions Abbott has made regarding Nu-Pharm's ANDA. By delaying and withholding Nu-Pharm's approval, FDA effectively has done what Abbott could not do in the *Nu-Pharm* action; namely, delay approval of the Nu-Pharm ANDA based on a finding of infringement and validity in the *Nu-Pharm* action. FDA's refusal to grant final approval is unlawful.

III.   **Nu-Pharm Is Entitled To Immediate Final Approval Of ANDA No. 77-615.**

"If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Courts "must reject administrative constructions which are contrary to clear congressional intent." *Chevron*, 467 U.S. at 843 n.9 (citations omitted). "The preeminent canon of statutory interpretation requires [the courts] to presume that the legislature says in a statute what it means and means in a statute what it says there." *Bedroc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quotations and citation omitted). Furthermore, "[i]t is a fundamental cannon of statutory

Gary Buehler
Director, Office of Generic Drugs
December 21, 2007
Page 6

construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991) (recognizing that "statutory language must always be read in its proper context"); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 220-21 (1986); *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285 (1956) (rejecting literal interpretation of words read in complete isolation from their context in the Act); *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) ("The literal language of a provision taken out of context cannot provide conclusive proof of congressional intent, any more than a word can have meaning without context to illuminate its use.").

In view of these principles, Nu-Pharm is entitled to immediate final approval of its ANDA for divalproex sodium delayed-release tablets 500 mg.

A.    **FDA Was Required To Approve Nu-Pharm's ANDA Upon Expiration Of The 30-Month Stay Absent A Decision In The *Nu-Pharm* Action.**

The FFDCA requires FDA to approve an ANDA upon expiration of the 30-month stay unless, before that time, the court hearing the patent infringement action—that is the subject of and arises from the filing of the paragraph IV ANDA—decides that the patent is infringed. The relevant provision provides:

> (iii) If the applicant made a certification described in subclause (IV) of paragraph (2)(A)(vii), the approval shall be made effective immediately unless, before the expiration of 45 days after the date on which the notice described in paragraph (2)(B) is received, *an action is brought for infringement of the patent that is the subject of the certification* and for which information was submitted to the Secretary under subsection (b)(1) or (c)(2) of this section before the date on which the application (excluding an amendment or supplement to the application), which the Secretary later determines to be substantially complete, was submitted. *If such an action is brought before the expiration of such days, the approval shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i) or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that—*

> *               *               *

> (II) if before the expiration of such period *the district court* decides that the patent has been infringed . . . .

21 U.S.C. § 355(j)(5)(B)(iii) (emphasis added).  The language of this provision is plain and admits of only one permissible interpretation.

Gary Buehler
Director, Office of Generic Drugs
December 21, 2007
Page 7

**HIGHLY CONFIDENTIAL**
**UNDER NU-PHARM'S ANDA**

Where, as here, the applicant submits an ANDA with a paragraph IV certification, FDA "shall" make the approval effective immediately, unless "an action is brought for infringement of the patent that is the subject of the certification." *Id.* If such an action is brought within the 45-day period after the patent owner and NDA-holder receive notice of the paragraph IV ANDA, "the approval shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice." *Id.* This instruction is mandatory—FDA has no discretion because the approval "*shall* be made effective" upon expiration of the 30-month stay. *Id.* (emphasis added). The only exception of possible relevance here is where "the district court" decides that the patent is infringed before the expiration of the 30-month stay.[3] But the term "the district court" does not refer to just any court, but rather to the court hearing the "action" that "is brought for infringement of the patent that is the subject of the certification." *Id.* In other words, it is the court hearing the action filed against the ANDA applicant by the patent owner and NDA-holder, after receiving notice of the paragraph IV ANDA, alleging infringement under 35 U.S.C. § 271(e)(2)(A). The Agency cannot lawfully construe or interpret this provision otherwise.

The application of this statutory provision to Nu-Pharm's ANDA is straightforward and simple. Nu-Pharm filed an ANDA containing a paragraph IV certification and provided the requisite notice to Abbott, the NDA-holder and patent owner. Within 45 days of receiving that notice, Abbott filed the *Nu-Pharm* action for infringement of the patents that are the subject of Nu-Pharm's paragraph IV certification. The filing of the *Nu-Pharm* action stayed the approval of Nu-Pharm's ANDA for 30-months from the receipt of Abbott's notice of Nu-Pharm's paragraph IV certification. That 30-month period expired on November 13, 2007. Thus, Nu-Pharm's "approval *shall* be made effective" immediately unless the "district court" hearing the "action" that "is brought for infringement of the patent that is the subject of the certification" decides that the patent has been infringed. *See* 21 U.S.C. § 355(j)(5)(B)(iii). In this case, of course, the "district court" and "action" refers solely to the *Nu-Pharm* Court and the *Nu-Pharm* action respectively. The *Nu-Pharm* Court is the only court hearing the *Nu-Pharm* action that was brought by Abbott for infringement of the patents that are the subject of Nu-Pharm's paragraph IV certifications. But the *Nu-Pharm* Court has not decided that the patents are infringed, and in fact has made *no* rulings of any kind in the *Nu-Pharm* action.

The statute, therefore, requires FDA to make Nu-Pharm's approval effective immediately. FDA has no lawful basis or authority to continue delaying Nu-Pharm's approval. The Agency's refusal to approve Nu-Pharm's ANDA violates the plain and unambiguous language of the FFDCA.

---

[3] The court may also delay approval based on the parties' failure to cooperate in expediting the action, or if a preliminary injunction is entered, 21 U.S.C. § 355(j)(5)(B)(iii), but neither is applicable here either.

Gary Buehler                                    **HIGHLY CONFIDENTIAL**
Director, Office of Generic Drugs               **UNDER NU-PHARM'S ANDA**
December 21, 2007
Page 8

B.    **FDA Cannot Lawfully Delay Approval Of Nu-Pharm's ANDA No. 77-615 Based On The Entry Of An Order In Another Action Involving A Different ANDA And Applicant To Which Nu-Pharm Was Not, And Is Not, A Party.**

       To the extent FDA has delayed and withheld Nu-Pharm's approval based on the *Apotex* action, such Agency action (or inaction as the case may be) is arbitrary, capricious, an abuse of discretion and contrary to the plain language of the statute. Simply put, FDA cannot lawfully delay Nu-Pharm's approval based on a decision in the *Apotex* action, to which Nu-Pharm was not and is not a party, and which is not the court hearing the infringement dispute over Nu-Pharm's paragraph IV ANDA. To be clear, the only court that matters is the court hearing the patent infringement action that arises out of, and is for infringement of the patents that are the subject of, the ANDA-filer's paragraph IV certification. Here, of course, that is the *Nu-Pharm* Court, not the *Apotex* Court.

       FDA has never interpreted the statute otherwise, and certainly has never interpreted the term "court" or "action" to mean other, unrelated actions brought against other ANDA-filers. For example, to Nu-Pharm's knowledge, FDA has never delayed an applicant's approval based on an unfavorable decision in another, unrelated action that did not arise out of that applicant's paragraph IV certification. Nor has FDA ever terminated a 30-month stay and approved one applicant based on the resolution of litigation against another applicant. Indeed, FDA would not have terminated Nu-Pharm's stay and approved Nu-Pharm's ANDA based on a favorable outcome in the *Apotex* action. For the same reason, FDA cannot lawfully delay Nu-Pharm's approval based on the *Apotex* action. To hold otherwise not only violates the plain language of the statute, but also leads to absurd results and abuses that Congress could not have intended. Congress made plain, through unambiguous language, that an applicant's approval is controlled by and subject to its own court action, not the court actions of others. FDA's interpretation to the contrary here violates the statute and is unprecedented.

       Not surprisingly, no court has ever adopted such an absurd interpretation of this unambiguous statutory language. Quite the contrary, the courts always have interpreted the terms "court" and "action" in this context to mean the court that is hearing the infringement action that arises out of and is the subject of that particular ANDA applicant's paragraph IV certification. For example, in describing the regulatory framework at issue here, the Eleventh Circuit stated: "*[i]f the court hearing the infringement action* declares the patent invalid or not infringed, this automatic delay in FDA approval terminates, 21 U.S.C. § 355(j)(5)(B)(iii)(I), or, if *the court* finds the patent valid and infringed, the approval date will be set for a date on or after the patent's expiration, 21 U.S.C. § 355(j)(5)(B)(iii)(II), 35 U.S.C. § 271(e)(4)(A)." *Valley Drug Co. v. Geneva Pharms., Inc.,* 344 F.3d 1294, 1297 (11th Cir. 2003) (emphasis added). The Federal Circuit has interpreted the statute similarly: "If the patentee files suit within [the 45-day] period, the FDA may not approve the ANDA until the expiration of the patent, judicial resolution of the infringement suit, a judicial determination that the patent is invalid or unenforceable, or thirty months from the patentee's receipt of notice, whichever is earliest. *The court in which the suit is pending* may order a shorter or longer stay on the approval time, if 'either party to the action fail[s] to reasonably cooperate in expediting the action.' 21 U.S.C. § 355(j)(5)(B)(iii)."

Gary Buehler
Director, Office of Generic Drugs
December 21, 2007
Page 9

*Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1327 (Fed. Cir. 2001) (emphasis added).

The district courts, too, agree. In *Purepac Pharmaceutical Co. v. Thompson*, 238 F. Supp. 2d 191 (D.D.C. 2002), where the proper interpretation of the statutory provisions governing paragraph IV certifications and their legal consequences was directly at issue, the court stated:

> If a suit is initiated, the FDA's approval of the ANDA is automatically stayed for 30 months, a period that can be lengthened or shortened *by the court hearing the case* if either party fails to "reasonably cooperate in expediting the action." 21 U.S.C. § 355(j)(5)(B)(iii). If, before the expiration of the 30-month stay, *the court* finds that the patent is invalid or would not be infringed by the new drug, the FDA's approval of the ANDA becomes effective on the date of that ruling.

238 F. Supp. 2d at 194-95 (emphasis added). Similarly, in *Mylan Laboratories, Inc. v. Thompson*, 332 F. Supp. 2d 106 (D.D.C. 2004), which concerned a matter involving the intersection between the ANDA application and certification requirements under Hatch-Waxman, the pediatric exclusivity provision, and the patent laws governing declaratory judgment actions, the court noted:

> If the patent holder or NDA is successful in its lawsuit, that is, *the court hearing the patent infringement litigation concludes that the patent is valid and infringed*, the Patent Code provides that 'the court shall order the effective date of any approval of the drug . . . involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed.' 35 U.S.C. § 271(e)(4)(A).

332 F. Supp. 2d at 112 (emphasis added). Finally, in interpreting § 355(j)(5)(B)(iii) in connection with an ANDA applicant's filing of a paragraph IV certification and notice requirements, the Eastern District of Pennsylvania has stated:

> If the patentee files suit, the FDA may not approve the ANDA until the patent expires, judicial resolution of the infringement action, a judicial determination that the patent is either invalid or unenforceable, or thirty months from the patentee's receipt of notice, whichever occurs first. *The Court in which the suit is pending has the authority to order a shorter or longer stay on the approval time*, if "either party to the action fail[s] to reasonably cooperate in expediting the action." 21 U.S.C. § 355(j)(5)(B)(iii).

*Astrazeneca AB v. Mutual Pharm. Co.*, 221 F. Supp. 2d 528, 530 (E.D. Pa. 2002) (internal citations omitted) (emphasis added).

Gary Buehler
Director, Office of Generic Drugs
December 21, 2007
Page 10

**HIGHLY CONFIDENTIAL**
**UNDER NU-PHARM'S ANDA**

The courts thus agree on what is required before the Agency may delay approval of an ANDA: either *"the court hearing the infringement action* . . . finds the patent valid and infringed," *Valley Drug*, 344 F.3d at 1297, or, *"[t]he court in which the suit is pending* may order a shorter or longer stay on the approval time, if either party to the action fail[s] to reasonably cooperate in expediting the action," *Mylan*, 268 F.3d at 1327. Either way, one thing is clear, FDA may take no action without a determination by the *particular* court hearing the *particular* patent infringement action involving that *particular* ANDA applicant. No such court decision has been rendered here; the *Nu-Pharm* Court has entered *no* order of patent validity or infringement, *no* injunction order, and *no* order charging either party with failing to cooperate. The Agency's refusal to approve Nu-Pharm's ANDA therefore violates not only the plain language of the statute, but the courts' interpretation of the statute as well.

**IV.    Conclusion.**

For all the reasons stated above, Nu-Pharm is statutorily entitled to immediate approval of its ANDA No. 77-615 for Divalproex Sodium Delayed-Release Tablets 500 mg. Nu-Pharm respectfully requests a response from the Agency no later than January 7, 2008. Again, if the Agency does not respond by that date, Nu-Pharm will assume that its request has been denied and reserves all rights to proceed accordingly.

Very truly yours,

RAKOCZY MOLINO MAZZOCHI SIWIK LLP

William A. Rakoczy

Christine J. Siwik

cc (via e-mail):        Shashank Upadhye
                        *Vice President - Global Head of Intellectual Property*
                        *Apotex Inc.*

                        Gerald F. Masoudi
                        *Chief Counsel*
                        *FDA Office of Chief Counsel*

                        Elizabeth Dickinson
                        *General Attorney*
                        *FDA Office of Chief Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| NU-PHARM INC. ) | |
| 50 Mural Street, Units 1 and 2 ) | |
| Richmond Hill, Ontario L4B I E4, ) | |
| ) | |
| Plaintiff, ) | Case No. 08-cv-00070 (RWR) |
| v. ) | |
| ) | |
| FOOD AND DRUG ADMINISTRATION ) | |
| 5600 Fishers Lane ) | |
| Rockville, Maryland 20857, ) | |
| ) | |
| MICHAEL O. LEAVITT ) | |
| Secretary of Health and Human Services ) | |
| 200 Independence Avenue, S.W. ) | |
| Washington, D.C. 20201, and ) | |
| ) | |
| ANDREW C. VON ESCHENBACH, M.D. ) | |
| Commissioner of Food and Drugs ) | |
| 5600 Fishers Lane ) | |
| Rockville, Maryland 20857, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## NU-PHARM INC.'S CERTIFICATE OF COUNSEL
## PURSUANT TO LOCAL CIVIL RULE 65.1(a)

Pursuant to Local Civil Rule 65.1(a), the undersigned counsel for Nu-Pharm Inc.

hereby certifies that, on January 15, 2008, at approximately 10:00 a.m. CDT, counsel for Nu-

Pharm informed the Federal Defendants, through counsel for FDA, of Nu-Pharm's intention to

seek a temporary restraining order and/or preliminary injunction in this matter, as well as the

anticipated time of the making of the application. Counsel for FDA declined to consent to entry

of the requested injunctive relief, and consultation pursuant to Local Civil Rule 7(m) has failed

to narrow the areas of disagreement. At approximately 2:30 pm CDT on January 15, 2008, Nu-

Pharm provided Federal Defendants with copies of Nu-Pharm's motion for temporary restraining

order and/or preliminary injunction and all supporting papers, including the proposed order; and

all other papers filed in this case via electronic mail, upon agreement.  Hard copies will also be

sent via overnight delivery.

Dated:  January 15, 2008.                         Respectfully submitted,

                                                  NU-PHARM INC.

                                          By:  _____/s/ William A. Rakoczy_____
                                                     One of its attorneys


William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Nu-Pharm Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| NU-PHARM INC. | ) | |
| 50 Mural Street, Units 1 and 2 | ) | |
| Richmond Hill, Ontario L4B I E4, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-00070 (RWR) |
| v. | ) | |
| | ) | |
| FOOD AND DRUG ADMINISTRATION | ) | |
| 5600 Fishers Lane | ) | |
| Rockville, Maryland 20857, | ) | |
| | ) | |
| MICHAEL O. LEAVITT | ) | |
| Secretary of Health and Human Services | ) | |
| 200 Independence Avenue, S.W. | ) | |
| Washington, D.C. 20201, and | ) | |
| | ) | |
| ANDREW C. VON ESCHENBACH, M.D. | ) | |
| Commissioner of Food and Drugs | ) | |
| 5600 Fishers Lane | ) | |
| Rockville, Maryland 20857, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**[PROPOSED] ORDER**

The Court having considered the Motion for Temporary Restraining Order and/or Preliminary Injunction of Plaintiff Nu-Pharm Inc. ("Nu-Pharm"), Nu-Pharm's supporting Memorandum of Law, the Declaration of William A. Rakoczy (and related exhibits), and all other papers filed in support of and in opposition to Nu-Pharm's Motion, and counsel for the Plaintiff and Defendants having been heard on the Motion,

The Court finds that Plaintiff has shown (a) a likelihood of success on the merits; (b) that it will be immediately and irreparably harmed absent injunctive relief; (c) that the balance of harms weighs in favor of granting injunctive relief; and, (d) that the public interest favors entry of injunctive relief.  It is therefore

**ORDERED THAT** Nu-Pharm's Motion for Preliminary Injunction be, and hereby is, **GRANTED**.

Defendants the Food and Drug Administration; Michael O. Leavitt, Secretary of Health and Human Services; and Andrew von Eschenbach, Commissioner of Food and Drugs, shall immediately award final effective approval for Nu-Pharm's divalproex sodium delayed-release 500 mg tablets under Nu-Pharm's ANDA No. 77-615.

**SO ORDERED**

Date: _____

_____
United States District Judge

## CERTIFICATE OF SERVICE

I, William A. Rakoczy, HEREBY CERTIFY that on this 15th day of January 2008, a true and correct copy of the foregoing Proposed Order was served via overnight and electronic mail upon the following:

Wendy S. Vicente, Esq.
Food & Drug Division, OGC
(Wendy.Vicente@fda.hhs.gov)
Drake Cutini, Esq.
(Drake.Cutini@usdoj.gov)
U.S. Department of Justice
Office of Consumer Litigation
Room 950 North
1331 Pennsylvania Ave., N.W.
Washington, D.C. 20004


_____/s/ William A. Rakoczy_____
William A. Rakoczy
*Counsel for Nu-Pharm Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| NU-PHARM INC. | ) | |
| 50 Mural Street, Units 1 and 2 | ) | |
| Richmond Hill, Ontario L4B I E4, | ) | |
|  | ) | |
| Plaintiff, | ) | Case No. 08-cv-00070 (RWR) |
| v. | ) | |
|  | ) | |
| FOOD AND DRUG ADMINISTRATION | ) | |
| 5600 Fishers Lane | ) | |
| Rockville, Maryland 20857, | ) | |
|  | ) | |
| MICHAEL O. LEAVITT | ) | |
| Secretary of Health and Human Services | ) | |
| 200 Independence Avenue, S.W. | ) | |
| Washington, D.C. 20201, and | ) | |
|  | ) | |
| ANDREW C. VON ESCHENBACH, M.D. | ) | |
| Commissioner of Food and Drugs | ) | |
| 5600 Fishers Lane | ) | |
| Rockville, Maryland 20857, | ) | |
|  | ) | |
| Defendants. | ) | |

_____

## [PROPOSED] ORDER

The Court having considered the Motion for Temporary Restraining Order and/or Preliminary Injunction of Plaintiff Nu-Pharm Inc. ("Nu-Pharm"), Nu-Pharm's supporting Memorandum of Law, the Declaration of William A. Rakoczy (and related exhibits), and all other papers filed in support of and in opposition to Nu-Pharm's Motion, and counsel for the Plaintiff and Defendants having been heard on the Motion,

The Court finds that Plaintiff has shown (a) a likelihood of success on the merits; (b) that it will be immediately and irreparably harmed absent injunctive relief; (c) that the balance of harms weighs in favor of granting injunctive relief; and, (d) that the public interest favors entry of injunctive relief.  It is therefore

**ORDERED THAT** Nu-Pharm's Motion for Temporary Restraining Order be, and hereby is, **GRANTED**.

Defendants the Food and Drug Administration; Michael O. Leavitt, Secretary of Health and Human Services; and Andrew von Eschenbach, Commissioner of Food and Drugs, shall immediately award final effective approval for Nu-Pharm's divalproex sodium delayed-release 500 mg tablets under Nu-Pharm's ANDA No. 77-615.

**SO ORDERED**

Date: _____

_____
United States District Judge

## CERTIFICATE OF SERVICE

I, William A. Rakoczy, HEREBY CERTIFY that on this 15th day of January 2008, a true and correct copy of the foregoing Proposed Order was served via overnight and electronic mail upon the following:

Wendy S. Vicente, Esq.
Food & Drug Division, OGC
(Wendy.Vicente@fda.hhs.gov)
Drake Cutini, Esq.
(Drake.Cutini@usdoj.gov)
U.S. Department of Justice
Office of Consumer Litigation
Room 950 North
1331 Pennsylvania Ave., N.W.
Washington, D.C. 20004

_____/s/ William A. Rakoczy_____
William A. Rakoczy
*Counsel for Nu-Pharm Inc.*